

questioned whether that entered into her decision not to punish them as the last game was to be held that night.

191. Plaintiff TC left the office. Approximately ten minutes after he left the school on October 31, 2008, then Principal Avella left a message on his home phone that DC had been brought into the office. He later discovered DC was kept there until the end of the school day with no clear explanation why, and DC was not allowed to call his parents despite his numerous requests to do so.

192. While in the office on October 31, 2008, DC was told by Vice Principal Joseph DeMaio in essence "the best thing you can do at this point is to go home." He was also told by then Principal Avella "Your opinions are not equal to ours, maybe they will be when you have a degree, until then you have no right to question myself or Mr. DeMaio."

193. As DC went to get on the bus on October 31, 2008, two minority students ("DS" and "WB") who were involved in the cafeteria and hallway incidents stood outside the bus taunting DC to get off the bus and fight.

194. This bus incident was witnessed by Vice Principal Thomas Balducci who was in close proximity. DC motioned to Mr. Balducci and stated "Do you see this? This is what I'm talking about." In response, Mr. Balducci only told the two students to move on.

195. When Plaintiff TC returned home from work and learned of the bus incident, he called Mr. Balducci and questioned if the issue from earlier in the week was so incendiary, why he hadn't he brought the two students who were taunting DC ("DS" and "WB") into the school to be dealt with by Principal Avella. Mr.

Balducci's response was that he did not pursue it because there was another incident down the bus line. When TC went to the school the next Monday and asked then Principal Avella if she had been notified of the bus incident, she said that she had not.

196. Four incidents occurred during the month of October, 2008 where DC was the victim of aggressive and threatening behavior by the same minority students, however, no written incident reports were filed, and there was no punishment imposed on the minority students. However DC got his Lunch period moved from 8th period to 5th period immediately after the cafeteria incident.

197. Following plaintiff DC's suspension from school for the remainder of the school year in December, 2008, in or about February, 2009, a death threat was written on one of the bathroom walls in the school stating "DC" will die 2/12/09.

198. Parents were never advised by the district of the threat that had been made against their son's life despite the fact that Sgt. Wimmer had discovered it and reported it, and a photograph of the threat had been taken on February 10, 2009.

199. According to written statement by Sgt. Patrick T. Wimmer dated June 4, 2009, he observed the statement on February 10, 2009 while using the lavatory next to room 139. The statement was removed the same day.

200. The statement later reappeared above the same urinal and stated the same words and DC was advised of the same by one of the students at the Valley Central High School (not district administration).

201. Upon knowledge of this threat on April 27, 2009, plaintiff TC reported the matter the next day to Mr. Glenn Taylor, Guidance Counselor, and Town of Montgomery



Police Officer Kenneth Byrnes on April 28, 2009.

202. Once Officer Byrnes had verified the threat was present, he indicated he would put the matter on his "Blotter" but no formal police report was filed, despite Plaintiffs' insistence that one should be. No one at the High school, including Officer Byrnes, alerted the Plaintiffs that there had been a similar threat made back in February, 2009.

203. It was only upon parents pursuing the matter and insistence that a formal report was filed on May 21, 2009, more than a month later.

204. Plaintiffs are not aware that any official police investigation took place, Officer Byrnes indicating in his report that he "was unable to locate any suspects" and "case was closed", and "custodians were contacted and it was immediately removed and cleaned off".

205. In early May, right after the second death threat had been reported by DC's parents, Superintendent Hooley called them saying he suddenly decided he would give DC a tutor 6 hours a week. This is after denying DC a tutor previously, even after Plaintiff TC told him as recently as 04/24/09 that DC was failing multiple subjects.

206. On May 14, 2009, Plaintiffs wrote to Dr. Debra M. Lynker, Interim Principal of Valley Central High School, regarding the matter of the recent death threat, and the October 2008 threats of bodily harm directed towards DC and his mother, and expressed their expectation that the District take the threats seriously and conduct an investigation.

207. On May 22, 2009, Plaintiffs met with Interim Principal Lynker to discuss the May

14, 2009 letter with counsel for the parents and the district present, It was at this meeting that the Plaintiffs found out there had been a previous death threat in February, 2009.

208. On June 1, 2009, parents wrote a follow-up letter to Interim Principal Lynker in which they inquired as to the status of the investigation.

209. On June 11, 2009, Interim Principal Lynker advised Plaintiffs that an "investigation" was done consisting of taking writing samples from all students in the JROTC and "other students of interest" (unspecified), and that there were no conclusive matches. The letter does not indicate who made that determination, and whether a handwriting analyst was employed.

210. The letter concludes with "We continue to monitor the area and check for any new graffiti". Plaintiffs point out the use of the word "graffiti" throughout Ms. Lynker's letter which downplays the incident and fails to recognize, given the past threats made against DC and Plaintiff KC, that the statement on the wall should have been taken seriously.

211. In addition to their concerns for their son DC, the claiming parents have other children, younger than DC in the District and fear for their safety. Plaintiffs sent Superintendent Hooley a letter dated July 6, 2009 expressing these concerns, including details of a recent incident that occurred in June, 2009 involving their 6th grade daughter.

212. The defendants' pattern of failing to address the ongoing racial violence and reverse discrimination directed towards plaintiffs is in violation of plaintiffs' rights under 42 U.S.C. Section 2000d *et. seq.*, Title VI of the Civil Rights Act of 1964

and the Fourteenth Amendment of the United States Constitution as enforced through 42 U.S.C. §1983.

213. Defendants, acting under color of state law, deprived plaintiffs' of their due process of law by failing to provide plaintiffs' protection of their right to be free from racial harassment and reverse discrimination is in violation of plaintiffs' rights under 42 U.S.C. §2000d, *et. seq.*, Title VI of the Civil Rights Act of 1964 and the Fourteenth Amendment of the United States Constitution as enforced through 42 U.S.C. §1983.

214. Defendants' unequal treatment of plaintiffs is in violation of plaintiffs' rights under 42 U.S.C. Section 2000d *et. seq.*, Title VI of the Civil Rights Act of 1964 and Fourteenth Amendment of the United States Constitution as enforced through 42 U.S.C. §1983.

215. Upon information and belief, it was the custom and/or practice and/or policy of the defendants to inadequately train and/or supervise their employees, agents, servants and assigns, thereby failing to discourage further Constitutional violations by their employees, agents, servants and assigns.

216. Upon information and belief, it was the custom and/or practice and/or policy of the defendants to ignore the racially violent, harassing and threatening conduct directed towards DC, a Caucasian, and his family, while ignoring and/or refusing to punish and/or to hold responsible the minority students who directed such threats of violence and harassment towards plaintiffs.

217. As a result of the customs and/or practices and/or policies of the defendants, their agents, servants and employees, defendants believed that their actions would not



be monitored by their supervisors, and that their misconduct and/or omissions of action would not be investigated and/or sanctioned and/or disciplined, and instead would be tolerated.

218. As a result of the customs and/or practices and/or policies of the defendants, their agents, servants and employees, led the minority students in VCSD who directed such threats of violence and harassment towards plaintiffs, to believe that their actions would not be monitored by the defendants, and that their misconduct would not be investigated and/or sanctioned and/or disciplined, and instead would be tolerated.

219. The above mentioned customs and/or practices and/or policies of the defendants, their agents, servants, assigns and employees, demonstrated, at best, a deliberate indifference on the part of the defendants to the constitutional rights of the plaintiffs, and other Caucasian students within VCSD, and they continue to suffer the violation of their Constitutional rights as described herein and above.

220. In addition, defendants acted with deliberate indifference to the complaints made by plaintiffs as it concerned acts of violence, threats of violence, harassment and reverse discrimination, and this was in derogation of plaintiffs' rights to be free of discrimination, and this is in violation of plaintiffs' rights under 42 U.S.C. §2000d *et. seq.*, Title VI of the Civil Rights Act of 1964 and Fourteenth Amendment of the United States Constitution as enforced through 42 U.S.C. §1983.

221. By reason of their acts and omissions, defendants, acting under color of state law, and within the scope of their authority, in gross and wanton violation of plaintiffs' and all other similarly situated Caucasian students' Constitutional rights,



subjected plaintiffs to unlawful discrimination in violation of the Fourteenth Amendment of the United States Constitution and of 42 U.S.C. §2000d *et. seq.*, Title VI of the Civil Rights Act of 1964 as enforced through 42 U.S.C. §1983.

222. By reason of the foregoing, plaintiff suffered and continue to suffer, mental injuries, economic injuries, deprivation of liberty and privacy, terror, humiliation and other psychological injuries. All of said injuries are permanent.

**AS AND FOR A FOURTH COUNT OF VIOLATION OF NEW YORK HUMAN RIGHTS LAW AGAINST ALL THE DEFENDANTS NAMED HEREIN PLAINTIFFS ALLEGE AND SAY:**

223. Plaintiffs repeat, reiterate and reallege each and every allegations numbered "1" through "222" of the within Complaint, with the same force and effect as though each were more fully set forth at length herein.

224. The defendants' pattern if failing to address the ongoing reverse discrimination, racial violence, threats of violence and harassment toward plaintiffs is in violation of New York Human Rights Law §§ 296(2)(a), 296(4), 296(6) and 296(7).

225. Defendants, acting as an education corporation and/or association which holds itself out to the public to be non-sectarian and exempt from taxation, permitted the discrimination and violence, threats of violence and harassment towards the plaintiffs by reason of their race.

226. By knowingly failing to take action to prevent and/or stop ongoing discrimination and violence directed against plaintiffs, defendants were aiding, abetting and inciting the minority students who directed the violence, threats of violence, harassment and discrimination against plaintiffs.



227. By reason of the foregoing, plaintiffs, and similarly situated Caucasian students attending school in VCSD, suffered and continue to suffer, mental injuries, economic injuries, deprivation of liberty and privacy, terror, humiliation and other psychological injuries. All of said injuries are permanent.

**AS AND FOR A FIFTH COUNT AGAINST DEFENDANTS VCSD and VCSD BOE FOR VIOLATING PLAINTIFFS' RIGHTS UNDER SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. § 794, AMERICANS WITH DISABILITY ACT 42 U.S.C. § 12131, *et. seq.* AND INDIVIDUALS WITH DISABILITIES EDUCATION IMPROVEMENT ACT ("IDEA"):**

228. Plaintiffs repeat, reiterate and reallege each and every allegations numbered "1" through "227" of the within Complaint, with the same force and effect as though each were more fully set forth at length herein.

229. No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity. *Americans with Disabilities Act, 42 U.S.C. §12132.*

230. DC has severe ADHD which was diagnosed at age 5, and he has been on a 504 Plan since 7th grade. His grades and behavior are indicative of a student who is having difficulties due to his disability. As of the December 5, 2008 incident discussed above, at which time DC was in the 12th Grade, his 504 Plan had not been reviewed or updated since 7th Grade despite his having received numerous "F's", and getting many discipline referrals for disability related behavior over the years.

231. Defendants VCSD is a public entity.



232. Title II of the Americans with Disabilities Act requires that public schools (a) not discriminate against students on the basis of disability, and (b) provide a reasonable accommodation to students with disabilities. *Id.*

233. At no time did the administration suggest adding a behavior modification plan to DC's 504 Plan, nor suggest any meetings with the school psychologist or that any further educational evaluations be conducted.

234. Instead, the District has continually used punishment as the sole means of handling DC's behavior, and made no attempt to help him. DC has been told by various teachers over the years that there is no such thing as ADHD or that he does not have ADHD.

235. On December 11, 2008, the matter was referred to the 504 Committee for a Manifestation Determination to review whether DC's behavior was a result of his disability. This referral was made after the school's presentation of their case against DC in the Superintendent's Hearing, but before the Superintendent had notified Plaintiffs of his finding of "Guilt", and only after KC, Plaintiff herein, had remarked after the hearing that DC suffered from ADHD. The Superintendent responded to Plaintiffs with the comment "You think he has ADHD".

236. The parents received no prior written notice of the 10:00 A.M. Manifestation Determination meeting to be held on December 12, 2008, but instead were notified by phone the afternoon of December 11th, 2008, leaving them no time to prepare or obtain pertinent records.

237. The December 12, 2008 Manifestation Determination Meeting was a sham, based on an inadequate and outdated evaluation of DC done before he entered



the Valley Central School District, more than eight years prior to the meeting.

238. The parents were not provided with a notice of their 504 Due Process and Procedural Rights, and not given an opportunity to review his records;

239. The only person at the hastily called Manifestation Determination meeting, other than DC's parents, who might have had some understanding of the effects of ADHD on DC's behavior, was the school psychologist, who admitted that she had never met DC. No special education teachers were present.

240. There was no formal re-evaluation conducted in connection with the Manifestation Determination Meeting by the 504 Committee that parents were privy to, only a rehashing of the charges against DC and a cursory review of his 504 Plan which just been reviewed and updated prior to the start of the Manifestation Determination Meeting, since it had not been reviewed or updated since before DC had entered the high school more than four years before.

241. No formal Manifestation Determination was reached by the 504 Committee while parents were present. Parents were told to leave and received a phone call later that day at 12:30 P.M. advising them that the Committee had found no nexus between DC's disability and the December 5, 2008 incident.

242. Upon information and belief, the "no nexus" decision had already been made when the 504 Committee had reconvened with DC's parents via a conference call, but with then Principal Avella also present.

243. The "no nexus" decision was made despite the fact that the 504 Committee had just met prior to the Manifestation Determination Meeting and determined that a Behavior Plan should be added to DC's 504 Plan. The school never followed



through on that due to DC's suspension for the rest of the school year.

244. In fact, VCSD, its employees and agents, lied to the parents regarding their right to a due process hearing which parents immediately requested during the call when they were informed of the "no nexus" decision.

245. Parents were never informed as to how the "no nexus" decision was reached and the reasons therefore.

246. When parents received the written report of the December 12th Manifestation Determination Meeting dated December 15th, 2008, they noticed numerous inaccuracies and misstatements in the document. Plaintiff TC called to inform 504 Chairperson, Vice Principal Joseph DeMaio, who refused to make any corrections.

247. It was made clear by the Superintendent in his letter dated December 22, 2008 in which he decided to suspend DC for the remainder of the school year that he had considered all of the incidents listed in the anecdotal record in his setting of punishment, even though most of the incidents were clearly related to DC's ADHD and should not have been considered at all, as a "nexus" determination had not been made for any of them.

248. Upon being suspended for the rest of the school year, DC was not eligible for tutoring, nor was he permitted to attend graduation, the prom, the senior trip, or the Valley Central Summer School Program, was prevented from continued participation in JROTC and thereby lost an opportunity to pursue a military career.

249. Following DC's suspension Plaintiff TC made numerous contacts with the school, both in person and by phone in order to, among other things, request a tutor for



DC as he was unable to complete his Math without proper instruction and was subsequently failing in this subject. Plaintiff was told multiple times by various school officials that DC could just drop Math as he did not need it to graduate. Requests for a tutor were flatly denied, and the Plaintiffs were told they could pay themselves to get DC help with his math.

250. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 *et. seq.*, and its implementing regulations, require that students with disabilities be provided access to free and appropriate public education (FAPE), and prohibit the exclusion of, or discrimination against, any otherwise qualified individual with a disability by federal fund recipients. Failure to provide accommodations and supplemental services constitutes discrimination for the purpose of the Rehabilitation Act.

251. A party establishes a violation of Section 504 of the Rehabilitation Act of 1973 where (a) he is disabled as defined by the Act; (b) he is otherwise qualified to participate in school activities; ( c) the school or the board of education received federal financial assistance; and (d) he was excluded from participation in, denied benefits of, or subject to discrimination at the school.

252. A school district violates Section 504 when (a) it denies a child a guaranteed education merely because of that child's disability, (b) refuses to provide that child access to the school because of his disability or ( c) refuses to provide reasonable accommodations that are necessary to provide the disabled child access to an education.

253. When an education agency fails to provide a disabled child with a free and

appropriate education, it violates Section 504.

254. The defendant VCSD receives federal financial assistance.

255. The actions of defendants VCSD and VCSD BOE, their agents, servants and employees, as set forth herein, have denied DC participation in, denied benefits of, including a free and appropriate education, and subjected to discrimination by the defendants by reason of his disability.

256. The actions of defendants VCSD and VCSD BOE, their agents, servants and employees, as set forth herein, constitute gross mismanagement of DC's educational program, which has denied DC equal services, programs or activities based on his disabilities, all in violation of his rights under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 and its regulations, Americans with Disabilities Act 42 USCS §12131, *et. seq.* and its regulations, and the Civil Rights Act 42 USCS §1983.

257. The actions of defendants VCSD and VCSD BOE, their agents, servants and employees, as set forth herein, have violated DC's right to a free appropriate public education in the least restrictive environment, under the Individuals with Disabilities Education Improvement Act, as amended, 20 U.S.C. §1410, *et. seq.*, and its regulations.

258. Defendants, VCSD and VCSD BOW, its agents, servants and employees, under color of state law, have deprived DC of federal statutory rights guaranteed him by IDEA, Section 504 and the ADA, in violation of 42 U.S.C. §1983.

259. Because of defendants' policies and actions, plaintiff has suffered and continues to suffer injury and irreparable harm, and is therefore entitled to an award of



damages in an amount to be determined by the evidence and this Court.

**AS AND FOR A SIXTH COUNT OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL THE DEFENDANTS NAMED HEREIN PLAINTIFFS ALLEGE AND SAY:**

260. Plaintiffs repeat, reiterate and reallege each and every allegations numbered "1" through "260" of the within Complaint, with the same force and effect as though each were more fully set forth at length herein.

261. The defendants' pattern of failing to address the ongoing discrimination, violence, threats of violence and harassment towards plaintiff DC has caused severe emotional distress to the plaintiffs.

262. The conduct of defendant VCSD, its agents, servants and employees as aforesaid, in intentionally or recklessly making false statements against plaintiff DC, has caused severe emotional distress to the plaintiffs.

263. Defendants' actions and inactions demonstrate extreme and outrageous conduct.

264. The defendants' conduct was done with the intent to cause and/or in disregard of a substantial probability of causing severe emotional distress to the plaintiffs.

265. Defendants' conduct proximately caused plaintiffs' emotional distress.

266. The plaintiffs' emotional distress was severe in that it was of such intensity and duration that no reasonable person should be expected to endure it.

**AS AND FOR A SEVENTH COUNT OF NEGLIGENT SUPERVISION AGAINST ALL THE DEFENDANTS NAMED HEREIN PLAINTIFFS ALLEGE AND SAY:**

267. Plaintiffs repeat, reiterate and reallege each and every allegations numbered "1" through "266" of the within Complaint, with the same force and effect as though

each were more fully set forth at length herein.

268. Defendants had a duty to train and supervise its employees in order to prevent students of VCSD to become the subject of discrimination, hate, bias crimes, violence, threats of violence and harassment.

269. Defendants breached that duty.

270. This breach of duty was a direct and proximate cause of plaintiffs being harmed and damaged. Plaintiffs were the subject of discrimination, violence, threats of violence and harassment, that had defendants employees, agents and servants been properly trained, would have been prevented.

271. Defendants had a duty to supervise, instruct, counsel, educate and discipline non-plaintiff Student Actors in order to prevent DC and Caucasian students similarly situated from being subjected to discrimination, hate and bias crimes, violence, threats of violence and harassment.

272. As a direct and proximate cause of defendants' negligent supervision, plaintiffs were harmed and damaged.

**AS AND FOR A EIGHTH COUNT OF HOSTILE EDUCATION ENVIRONMENT AGAINST ALL THE DEFENDANTS NAMED HEREIN PLAINTIFFS ALLEGE AND SAY:**

273. Plaintiffs repeat, reiterate and reallege each and every allegations numbered "1" through "272" of the within Complaint, with the same force and effect as though each were more fully set forth at length herein.

274. The defendants' pattern of failing to address the ongoing discrimination, violence, threats of violence, harassment and defamation towards plaintiff DC has created



a hostile educational environment.

275. The defendants' pattern of failing to address the ongoing racial violence and reverse discrimination directed towards plaintiffs is in violation of plaintiffs' rights under 42 U.S.C. Section 2000d *et. seq.*, Title VI of the Civil Rights Act of 1964 and the Fourteenth Amendment of the United States Constitution as enforced through 42 U.S.C. §1983.

276. Defendants, acting under color of state law, deprived plaintiffs' of their due process of law by failing to provide plaintiffs' protection of their right to be free from racial harassment and reverse discrimination is in violation of plaintiffs' rights under 42 U.S.C. §2000d, *et. seq.*, Title VI of the Civil Rights Act of 1964 and the Fourteenth Amendment of the United States Constitution as enforced through 42 U.S.C. §1983.

277. Defendants' unequal treatment of plaintiffs is in violation of plaintiffs' rights under 42 U.S.C. Section 2000d *et. seq.*, Title VI of the Civil Rights Act of 1964 and Fourteenth Amendment of the United States Constitution as enforced through 42 U.S.C. §1983.

278. Defendants, their agents, servants and employees, failed in their duty to provide a nondiscriminatory educational environment for their charges.

279. Defendants, their agents, servants and employees, have been made aware of egregious forms of intentional discrimination, violence, threats of violence, harassment and defamation, but have made the intentional choice to sit by and do nothing to rectify it.

280. By reason of the actions and/or inactions of the defendants, their agents, servants



and employees, and their ignoring of the above facts, the defendants, their agents, servants and employees, facilitated and maintained a hostile educational environment which allowed the discrimination, violence, threats of violence, defamation, harassment, and hate and bias crimes directed towards DC to be continued and ongoing.

281. As a direct and proximate cause of this hostile educational environment, plaintiffs were harmed and damaged, and entitled to compensation therefor.

**AS A FOR A NINTH COUNT OF NEGLIGENCE PER SE-FEDERAL HATE CRIME PREVENTION AGAINST ALL DEFENDANTS, PLAINTIFFS ALLEGE AND SAY:**

282. Plaintiffs repeat, reiterate and reallege each and every allegations numbered "1" through "282" of the within Complaint, with the same force and effect as though each were more fully set forth at length herein.

283. Negligence per se is negligence due to the violation of a public duty.

284. Defendants, their agents, servants and employees, had a duty to prevent racial discrimination, violence, threats of violence and harassment against the students of VCSD.

285. Defendants, their agents, servants and employees, were on notice that such racial discrimination, violence, threats of violence and harassment existed, and did nothing about it.

286. Defendants, their agents, servants and employees, are expected to prevent racial discrimination, violence, threats of violence and harassment by reason of anti-discriminations law, including but not limited to plaintiffs rights under 42 U.S.C.



2000d *et. seq.*, Title VI of the Civil Rights Act of 1964, the Fourteenth Amendment of the United States Constitution as enforced through 42 U.S.C. §1983, and 20 U.S.C. §7133, a federal program to prevent discrimination in the form of hate crimes in public schools.

287. These laws create the public duty to prevent and address discrimination that the defendants, their agents, servants and employees, breached.

288. As a direct and proximate cause of this breach, plaintiffs were damages, and continue to suffer damage and harm, and are entitled to compensation therefor.

**PUNITIVE DAMAGES**

289. Plaintiffs repeat, reiterate and reallege each and every allegations numbered "1" through "288" of the within Complaint, with the same force and effect as though each were more fully set forth at length herein.

290. That at all times mentioned herein, Defendants, their agents and employees, had a duty to provide Plaintiff with FAPE, and an educational environment that was free from hostility and discrimination.

291. That at all times mentioned herein, Defendants, their agents and employees had a duty to properly train, supervise and monitor Defendants' employees, and to monitor, supervise and discipline Defendants' employees to prevent discrimination of plaintiff DC, by reason of his disability and his race.

292. Defendants, their agents and employees, intentionally, wantonly, fraudulently and / or wrongfully failed to protect plaintiff DC from discrimination on the basis of his disability and race.

293. Upon information and belief, the failure on the part of Defendants, their agents and



employees, to train supervise and monitor its employees caused permanent injury and irreparable harm to Plaintiff.

294. That by reason of all of the foregoing, the Defendants acted intentionally and with deliberate indifference and wanton disregard of the well being of the Plaintiff.

295. That the above conduct involves moral turpitude, was reprehensible, shocks the public conscience and demonstrated a gross, wanton, depraved indifference and/or deliberate and reckless disregard for the safety of Plaintiffs and others similarly situated.

296. Defendants' conduct was so wanton and outrageous that Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. Section 2000d, *et seq.*, as well as 42 U.S.C. Section 1981, Title VII of the Civil Rights Act of 1964, and the Fourteenth Amendment of the United States Constitution as enforced through 42 U.S.C. Section 1983.

**JURY DEMAND**

297. Plaintiffs demand trial by Jury.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request judgment:

A. Declaring that the actions and practices of Defendants violated Title VII and the NYSHRL, and enjoining such violations;

B. Declaring that all Defendants are jointly and severally liable;

C. Directing Defendants to pay Plaintiffs compensatory damages for the injuries sustained by them, in an amount to be determined at trial;

D. Directing expungement and/or overturning of the record with respect to the



December 5, 2008 incident;

E. Directing Defendants to pay Plaintiffs punitive damages sufficient to punish and deter continuation of their unlawful practices, in an amount to be determined at trial;

F. Awarding Plaintiffs pre-judgment interest, costs, disbursements, attorney fees and expert fees pursuant to 42 USC §12205, 42 USC §794a(b), 42 USC §1981, 42 USC §1988 and 42 USC §1985 and Fed. R. Civ. P. 54 (d) (2);

G. Granting Plaintiffs injunctive relief in the form of an order requiring Defendants to preserve all relevant documents, and an order preventing Defendants from discussing this action with each other except for with their respective counsel;

K. Granting Plaintiff such additional relief as the Court seems just and proper

Dated: October 27, 2009
Katonah, NY

Law Office of Peter D. Hoffman, PC

By: [signature]

Peter D. Hoffman, Esq. (PH-8306)
Attorney for Plaintiff
200 Katonah Avenue
Katonah, NY 10536
(914) 232-2242 phone
(914) 232-2245 facsimile
pdh2@pdhoffmanlaw.com e-mail

Giulia Frasca, Esq., (GF-2545)
Law Office of Peter D. Hoffman, P.C.
Attorney for Plaintiff
200 Katonah Avenue
Katonah, NY 10536
(914) 232-2242 phone
(914) 232-2245 facsimile
GF@pdhoffmanlaw.com e-mail

Betty J. Potenza, Esq. (BP-1795)
Law Office of Peter D. Hoffman, P.C.