UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X
TC and KC, individually, and as parents of DC,

                    Plaintiffs,

             -against-

VALLEY CENTRAL SCHOOL DISTRICT; VALLEY
CENTRAL SCHOOL DISTRICT BOARD OF EDUCATION;
RICHARD M. HOOLEY, Individually and as Superintendent of
the Valley Central School District; JOANNE AVELLA,
Individually and as Former Principal of Valley Central High
School; DR. DEBRA M. LYNKER, Individually and as Former
Interim Principal of Valley Central High School; THOMAS
BALDUCCI, Individually, and as Vice Principal of Valley
Central High School; JOSEPH DIMAIO, Individually and as Vice
Principal of Valley Central High School; BRYAN GUIDICE,
Individually and as Former Vice Principal of Valley Central High
School; GLENN TAYLOR, Individually and as Guidance
Counselor of Valley Central High School; MAJOR ROBERT
"BOB" BOULDIN, Individually and as Senior Army Instructor of
Valley Central JROTC; SERGEANT PATRICK TO. WIMMER,
Individually and as Army Instructor of Valley Central ROTC;
Unknown Students 1-100; Unknown Teachers 1-100; Unknown
Administrators 1-100; Unknown Lunch Aides 1-100, the exact
names and identities of whom are not presently known,

                    Defendants.

--------------------------------------------------------------------------X

Docket No.: 09-CV-9036
(CS) (GAY)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**SOKOLOFF STERN LLP**
**355 POST AVENUE, SUITE 201**
**WESTBURY, NEW YORK 11590**

*Of Counsel:*
*Adam I. Kleinberg*
*Leo Dorfman*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ v

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 3

ARGUMENT ............................................................................................................................ 7

POINT I .................................................................................................................................... 7

    TC AND KC LACK STANDING TO MAINTAIN THIS ACTION ON BEHALF OF DC

POINT II ................................................................................................................................... 8

    PLAINTIFFS' INEXCUSABLE FAILURE TO EXHAUST STATE ADMINISTRATIVE
    REMEDIES DEPRIVES THE COURT OF SUBJECT MATTER JURISDICTION OVER
    PLAINTIFFS' IDEA, SECTION 504 AND ADA CLAIMS

        A. PLAINTIFFS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES,
           DEPRIVING THIS COURT OF SUBJECT MATTER JURISDICTION OVER THE
           IDEA-RELATED CLAIMS

        B. PLAINTIFF CANNOT SHOW THAT ATTEMPTING TO EXHAUST
           ADMINISTRATIVE REMEDIES WOULD HAVE BEEN FUTILE

POINT III .............................................................................................................................. 12

    PLAINTIFFS' ADA AND SECTION 504 CLAIMS AGAINST THE INDIVIDUAL
    DEFENDANTS FAIL BECAUSE THOSE STATUTES DO NOT PROVIDE FOR INDIVIDUAL
    LIABILITY

POINT IV ............................................................................................................................... 12

    THE EQUAL PROTECTION AND TITLE VI CLAIMS ARE UNSUSTAINABLE

        A. EQUAL PROTECTION CLAIMS AGAINST THE DISTRICT AND INDIVIDUALS
           IN OFFICIAL CAPACITY ARE SUBSUMED BY PLAINTIFFS' TITLE VI
           CLAIMS

        B. PLAINTIFFS FAIL TO STATE A TITLE VI CLAIM AGAINST THE DISTRICT

           1. DISTRICT WAS NOT DELIBERATELY INDIFFERENT TO THE CAFETERIA,
             HALLWAY, AND BUS INCIDENTS

2. THE DISTRICT WAS NOT DELIBERATELY INDIFFERENT TO THE GRAFFITI ON A BATHROOM WALL

3. THE ALLEGED HARASSMENT AND DISTRICT RESPONSE DID NOT DEPRIVE DC OF ACCESS TO THE EDUCATIONAL BENEFIT OR OPPORTUNITIES PROVIDED

C. INDIVIDUALS ARE NOT LIABLE UNDER TITLE VI

POINT V ........................................................................................................................ 18

PLAINTIFFS FAIL TO STATE A FIRST AMENDMENT CLAIM AS DC'S MATERIALLY AND SUBSTANTIALLY DISRUPTIVE SPEECH WAS NOT PROTECTED BY THE FIRST AMENDMENT

POINT VI ....................................................................................................................... 19

PLAINTIFFS FAIL TO STATE A DUE PROCESS CLAIM

POINT VII ...................................................................................................................... 20

PLAINTIFFS HAVE FAILED TO ALLEGE A MONELL CLAIM

POINT VIII ..................................................................................................................... 21

THE INDIVIDUAL DEFENDANTS ARE ALL ENTITLED TO QUALIFIED IMMUNITY FROM SUIT

A. SUPERINTENDENT RICHARD M. HOOLEY IS ENTITLED TO QUALIFIED IMMUNITY

B. DR. DEBRA M. LYNKER IS ENTITLED TO QUALIFIED IMMUNITY

C. THOMAS BALDUCCI IS ENTITLED TO QUALIFIED IMMUNITY

D. JOSEPH DEMAIO IS ENTITLED TO QUALIFIED IMMUNITY

E. GLEN TAYLOR IS ENTITLED TO QUALIFIED IMMUNITY

F. BRIAN GIUDICE IS ENTITLED TO QUALIFIED IMMUNITY

G. MAJOR ROBERT BOULDIN IS ENTITLED TO QUALIFIED IMMUNITY

H. SERGEANT PATRICK T. WIMMER IS ENTITLED TO QUALIFIED IMMUNITY

POINT IX ....................................................................................................................... 26

PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE NYS HUMAN RIGHTS LAW

Point X ...................................................................................................................... 27

    Plaintiffs' Negligent Supervision and Negligence Per Se Claims Must Be Dismissed Because They Failed to Comply with Gen. Mun. Law §§50-e and 50-i

Point XI ..................................................................................................................... 28

    Plaintiffs Fail to State a Claim for Intentional Infliction of Emotional Distress

Point XII .................................................................................................................... 29

    Plaintiffs Fail to State a Claim for Defamation

Conclusion .................................................................................................................. 30

## TABLE OF AUTHORITIES

A.W. v. Jersey City Public Schools,
   486 F.3d 791 (3d Cir. 2007)................................................................................................13

Albert v. Loksen,
   239 F.3d 256 (2d Cir. 2001)...............................................................................................29

Anderson v. Creighton,
   483 U.S. 635 (1987).............................................................................................................22

Baez v. N.Y.C. Health and Hosps. Corp.,
   80 N.Y.2d 571 (1992)..........................................................................................................27

Baker v. Carr,
   369 U.S. 186 (1962)...............................................................................................................8

Batista v. Rodriguez,
   702 F.2d 393 (2d Cir. 1983)...............................................................................................20

"BD" v. DeBuono,
   130 F.Supp.2d 401 (S.D.N.Y. 2000)...................................................................................9

Brown v. Board of Comm'rs of Bryan County v. Brown,
   520 U.S. 397 (1997).............................................................................................................21

Bruneau v. South Kortright CSD,
   163 F.3d 749 (2d Cir. 1998)...............................................................................................13

Cave v. East Meadow Union Free School Dist.,
   514 F.3d 240 (2d Cir. 2008)................................................................................................9

Celle v. Filipino Reporter Enterprises Inc.,
   209 F.3d 163 (2d Cir. 2000)...............................................................................................30

Charles W. v. Maul,
   214 F.3d 350 (2d Cir. 2000)...............................................................................................22

City of Canton v. Harris,
   489 U.S. 378 (1989).............................................................................................................20

City of St. Louis v. Praprotnick,
   485 U.S. 112 (1988).............................................................................................................20

D.F. ex rel. Finkle v. Bd. of Educ. of Syosset Cent. Sch. Dist.,
   386 F. Supp. 2d 119 (E.D.N.Y. 2005).................................................................................29

Davis v. Monroe County Bd. of Educ.,
    526 U.S. 629 (1999) ..................................................................................................... 14

DeFabio v. East Hampton Union Free School Dist.,
    2009 WL 3150248 (E.D.N.Y. 2009) ............................................................................ 18

Dellefave v. Access Temporaries, Inc.,
    2001 WL 25745 (S.D.N.Y. 2001) ................................................................................ 29

Doninger v. Niehoff,
    527 F.3d 41 (2d Cir.2008) ............................................................................................ 18

DT v. Somers Cent. School Dist.,
    588 F.Supp.2d 485, n. 11 (S.D.N.Y. 2008) ................................................................. 13

East Meadow U.F.S.D. v. N.Y.S. Div. of Human Rights,
    65 A.D.3d 1342, 886 N.Y.S.2d 211 (2d Dept. 2009) .................................................. 26

Fincher v. County of Westchester,
    979 F. Supp. 989 (S.D.N.Y. 1997) ............................................................................... 27

Frazier v. Fairhaven Sch. Comm.,
    276 F.3d 52 (1st Cir. 2002) .......................................................................................... 11

Gant ex rel. Gant v. Wallingford Bd. of Educ.,
    195 F.3d at 140 ............................................................................................................. 13

Garcia v. S.U.N.Y. Health Svcs. Ctr.,
    280 F.3d 98 (2d Cir. 2001) ........................................................................................... 12

Gardner v. Uniondale Pub. Sch. Dist.,
    2008 WL 4682442 (E.D.N.Y., 2008) ........................................................................... 11

Goonewardena v. New York,
    475 F.Supp.2d 310 (S.D.N.Y. 2007) ........................................................................... 17

Hardy v. N.Y.C. Health & Hosps. Corp.,
    164 F.3d 789 (2d Cir. 1999) ......................................................................................... 27

Harlow v. Fitzgerald,
    457 U.S. 800 (1982) ..................................................................................................... 22

Hartnett v. Fielding Graduate Inst.,
    400 F. Supp.2d 570 (S.D.N.Y. 2005) ........................................................................... 12

Hope v. Cortines,
    872 F.Supp. 14 (E.D.N.Y. 1995) ................................................................................... 9

Howell v. N.Y. Post Co., Inc.,
  81 N.Y.2d 115, 121 (1993) ...........................................................................................28

Hudson v. Palmer,
  468 U.S. 517, 104 S.Ct. 3194 (1984) ..........................................................................19

Jeffes v. Barnes,
  208 F.3d 49 (2d Cir. 2000)............................................................................................21

Jewell v. City of New York,
  1995 WL 86432 (S.D.N.Y. March 1, 1995)..................................................................27

K.M. ex rel. D.G. v. Hyde Park Cent. Sch. Dist.,
  381 F.Supp.2d 343 (S.D.N.Y. 2005)............................................................................14

Kamal v. Hopmayer,
  2006 WL 3197161 (S.D.N.Y. 2006).............................................................................13

Kelly v. Rice,
  375 F.Supp.2d 203 (S.D.N.Y. 2005)............................................................................17

Kerman v. City of N.Y.,
  1999 WL 1022133 (S.D.N.Y. 1999).............................................................................27

Larkin v. Savage,
  318 F.3d 138 (2d Cir. 2003).........................................................................................19

LaVine v. Blaine Sch. Dist.,
  257 F.3d 981 (9th Cir. 2001)........................................................................................19

Liberman v. Gelstein,
  80 N.Y.2d 429 (1992) ...................................................................................................30

Lowery v. Euverard,
  497 F.3d 584 (6th Cir. 2007)........................................................................................18

Lujan v. Defenders of Wildlife,
  504 U.S. 555 (1992)........................................................................................................8

Malley v. Briggs,
  475 U.S. 335 (1986)......................................................................................................22

Middlesex County Sewerage Auth. v. National Sea Clammer Assoc.,
  453 U.S. 1 (1981)..........................................................................................................13

Mitchell v. Forsyth,
  472 U.S. 511 (1985)......................................................................................................21

Monell v. Dep't of Soc. Services of the City of New York,
    436 U.S. 658 (1978) ..........................................................................................................20

Murphy v. Am. Home Prod. Corp.,
    58 N.Y.2d 293, 303 (1983) ...............................................................................................28

Murphy v. Arlington CSD Bd. of Educ.,
    297 F.3d 195 (2d Cir. 2002) ..............................................................................................10

New Jersey v. T.L.O.,
    469 U.S. 325 (1985) ..........................................................................................................18

Oliveira v. Mayer,
    23 F.3d 642 (2d Cir. 1994) ................................................................................................22

Parratt v. Taylor,
    451 U.S. 527, 101 S.Ct. 1908 (1981) ................................................................................20

Pearson v. Callahan,
    129 S.Ct. 808 (2009) .........................................................................................................21

Pembaur v. City of Cincinnati,
    475 U.S. 469 (1986) ..........................................................................................................21

Phillips v. Village of Frankfort,
    31 Misc.2d 815 (Sup. Ct. 1961) ........................................................................................27

Polera v. Bd. of Educ. of Newburgh Enlarged City S.D.,
    288 F.3d 478 (N.Y. 2002) ...................................................................................................8

Rodriguez v. N.Y. Univ.,
    2007 WL 117775 (S.D.N.Y. 2007) ...................................................................................13

Ruecker v. Sommer,
    567 F.Supp.2d 1276 (D.Or. 2008) .....................................................................................11

Saucier v. Katz,
    533 U.S. 194, 121 S.Ct. 2151 (2001) ................................................................................21

Schlude v. Northeast Cent. Sch. Dist.,
    892 F. Supp. 560 (S.D.N.Y. 1995) ....................................................................................11

Seltzer v. Bayer,
    272 A.D.2d 263, 264-65 (1st Dep't 2000) .........................................................................28

Shakur v. McGrath,
    517 F.2d 983 (2d Cir. 1975) ..............................................................................................27

Sheikh v. City of N.Y. Police Dep't,
　　2008 WL 5146645 (E.D.N.Y. Dec. 5, 2008) ...........................................................28

Sorlucco v. New York City Police Dep't,
　　971 F.2d 864 (2d Cir. 1992)...................................................................................20

Tannenbaum v. City of N.Y.,
　　30 A.D.3d 357, 819 N.Y.S.2d 4 (1st Dept. 2006)..................................................28

Tinker v. Des Moines Independent Community School District,
　　393 U.S. 503 (1969)................................................................................................18

W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP,
　　549 F.3d 100 (2d Cir. 2008).....................................................................................7

Washington Square Post No. 1212 v. Maduro,
　　907 F.2d 1288 (2d Cir. 1990)..................................................................................21

Wisniewski v. Board of Educ. of Weedsport Cent. School Dist.,
　　494 F.3d 34 (2d Cir. 2007)......................................................................................18

Wood v. Strickland,
　　420 U.S. 308 (1975)................................................................................................18

**STATUTES**

20 U.S.C. § 1415(a) ............................................................................................................8

42 U.S.C. § 1983.................................................................................................1, 2, 12, 13

8 N.Y.C.R.R. § 200.5 (i) (l) and (j) (l) ..............................................................................9

N.Y. Educ. Law § 310.......................................................................................................20

N.Y. General Municipal Law §§ 50-e and 50-i................................................................27

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 8 (a)............................................................................................................1

Fed. R. Civ. P. 12(b) (1) and (6) .......................................................................................3

**PRELIMINARY STATEMENT**

Defendants Valley Central School District ("the District"), Valley Central School District Board of Education ("the Board"), Dr. Richard M. Hooley, Dr. Debra M. Lynker, Thomas Balducci, Joseph DiMaio, Brian Giudice, Glenn Taylor, Major Robert Bouldin, and Sergeant Patrick Wimmer submit this memorandum of law in support of their motion to dismiss this case pursuant to Fed. R. Civ. P. 12(b) (1) and (6).

Plaintiffs TC and KC have commenced this unsustainable civil rights action on behalf of their son, DC, who was involved in several race-related incidents and later suspended from his last semester of school for racially inflammatory statements in a document that he brought to class and handed to other students.  In a voluminous and often repetitive Amended Complaint, plaintiffs bring claims pursuant to 42 U.S.C. § 1983, alleging violations of the First Amendment and Fourteenth Amendments.  They also bring statutory claims pursuant to Title VI of the Civil Rights Act ("Title VI"), the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504"), and the Individuals with Disabilities Education Act ("IDEA").  Additionally, plaintiffs bring state law claims for defamation, negligent supervision, intentional infliction of emotional distress, negligence per se, and violations of the New York State Human Rights Law.  All these claims are subject to dismissal for either failure to state a claim or lack of subject matter jurisdiction.

First and foremost, plaintiffs TC and KC lack standing to maintain this action on behalf of their son, DC, who has now reached the age of majority.  As TC and KC did not personally suffer any concrete and particularized injury-in-fact to their own interests, if this action should be brought at all, it should be brought by DC himself.

Next, the IDEA, Section 504, and ADA claims should be dismissed for want of subject matter jurisdiction, as plaintiffs failed to raise these claims with a state administrative agency at the appropriate time.  While futility can sometimes excuse such failures, plaintiffs have not and cannot show such futility here.  Additionally, plaintiffs' ADA and Section 504 claims should be dismissed as against the individual defendants as these statutes do not permit individual liability.

Plaintiffs' failure to appeal DC's suspension to the New York State Commissioner of Education precludes a due process claim as well, as such claims are barred where existing state remedies are adequate to satisfy the requirements of due process.

Plaintiffs' equal protection claim against the District and its employees is subsumed by his Title VI claim.  This Title VI claim is unsustainable however, as plaintiffs' Amended Complaint makes clear that, far from acting with deliberate indifference to alleged racial harassment, defendants took concrete steps to alleviate it.  DC also cannot show that he was deprived of access to educational benefits, a necessary element of his Title VI claim and this claim must, therefore, fail as against the District and its employees.  The claim fails as against the individual defendants as well, as individuals cannot be held liable under Title VI.

Plaintiffs' First Amendment claim fails as well since it was reasonable to conclude that DC's racially inflammatory speech would lead to a material and substantial disruption at the school.  It was not entitled to First Amendment protection and cannot be the subject of a claim.

To the extent the Court finds that plaintiffs might have adequately asserted § 1983 claims, those claims fail as against the District since plaintiffs have failed to sufficiently allege a policy or practice such that the District may be held liable under a Monell theory of liability.

Additionally, qualified immunity shields defendants Hooley, Lynker, Balducci, DiMaio, Giudice, Taylor, Bouldin, and Wimmer from plaintiffs' § 1983 claims.  Plaintiffs' sparse

allegations fail to establish that any of these individuals acted unreasonably in the face of clearly established law.

Plaintiffs' state law claims fare no better.  Their Human Rights Law claims are barred because the District is not subject to suit under these circumstances.  The Court lacks subject matter jurisdiction of plaintiffs' negligent supervision and negligence per se claims fail because plaintiffs did not raise these claims in their notice of claim.  Finally, plaintiffs have failed to allege the extreme and outrageous conduct required to state a claim for intentional infliction of emotional distress, and have failed to allege special damages to support a defamation claim.

For the foregoing reasons, defendants respectfully request that the Court grant their motion in its entirety, dismissing the Amended Complaint.

### STATEMENT OF FACTS[1]

Plaintiffs TC and KC are the father and mother, respectively, of DC, a former student of the District's Valley Central High School.  See Exh. A, p. 4.

THREE DAYS IN OCTOBER

Plaintiffs allege that on October 28, 2008, DC was confronted by a minority student in the cafeteria during his 8th period lunch and that, while en route to his 9th period class, DC was again confronted by several minority students in an aggressive manner.  See Exh. A. ¶¶ 192, 193. Then-Principal defendant Avella met with plaintiff, advised plaintiff, among other things, that the use of the term "black" might be deemed derogatory by some, and DC's parents were promptly notified of the incident.  Id. at ¶ 201.

---

[1]  Eschewing Fed. R. Civ. P. 8 (a)'s "short and plain statement" requirement, plaintiffs commenced the instant action with a prolix 58 page complaint, containing 297 often-redundant paragraphs.  The Amended Complaint that is the subject of the instant motion is even longer, spanning 68 pages and 343 paragraphs, along with 37 pages of exhibits.

Immediately after the cafeteria incident, plaintiff's lunch period was moved from 8th period to 5th period. Id. at ¶ 221. Additionally, the parents of two students who witnessed the incident were asked to come into school the following day to speak with then-principal Avella. Id. at ¶ 201.

Plaintiffs admit that they do not know "whether the parents of the minority students were also directed to go into the school to speak to then-principal Avella." Id. at ¶ 202. They acknowledge, however, that during a meeting on October 29th, they were told that no one would be punished for that particular incident, that the school had taken proper steps to curb further inappropriate behavior and that Principal Avella expected all parties involved to stop any escalations stemming from the incident. Id. at ¶ 204. Plaintiffs take issue with the manner in which then-Principal Avella lectured DC about race during the October 29th meeting. Id. at p.10.

The following day, when rumors surfaced that the minority students might retaliate against DC during a Friday night football game, DC was warned about the rumors and advised to stay away from the game. Defendant Vice Principal Balducci also called TC and informed him of the rumors surrounding the football game. Id. at ¶ 209.

On the day of the game, DC was again called into the principal's office and advised, in essence, "the best thing you can do at this point is to go home." Id. at ¶ 214. As DC went to get on the bus to go home, two minority students who were involved in the cafeteria and hallway incidents taunted DC. Id. at ¶ 215. When defendant Mr. Balducci saw this, he told the two students to move on. Id. at ¶ 216.

DECEMBER RACIST STATEMENTS AND SUBSEQUENT SUSPENSION

On December 5, 2008, DC was found in possession of a document which he and a friend allegedly wrote. Id. at ¶ 77. Plaintiffs allege that these were lyrics to a rap song, but Major

4

Bouldin noted that the document contained several racially inflammatory statements.  Id. at ¶ 78.
Major Bouldin referred DC to Principal Avella, who immediately suspended DC and wrote
plaintiffs a letter, stating that DC was "exhibiting disruptive behavior" when he was "observed
during first period class, showing students a document that he wrote containing racial slurs,
epithets, and inflammatory remarks." Id. at ¶¶ 79, 80.

On December 11, 2008, a Superintendent's Hearing was held during which DC plead not
guilty to charges that "(1) he disrupted the classroom when he passed a document to another
student in JROTC class; and (2) he created a situation that led school authorities to reasonably
forecast a substantial disruption, when he passed a document containing racially-charged and
hostile language to another student and/or left the document in a location where it was accessible
to others." Id. at ¶ 88.

Following a 504 Committee and Manifestation Determination meeting, it was determined
that there was no nexus between plaintiff's ADHD and his disciplinary problems.   Id. at ¶ 104.
In ruling on DC's suspension, Dr. Hooley reasonably "considered plaintiff DC's anecdotal
record, and what he deemed was DC's history and notoriety in the school." Exh. A, ¶ 162.  He
found that this history "reasonably forecasts a substantial disruption based on the racially
charged and hostile language in the document." Id.  DC was suspended for the remainder of the
school year.

Indeed, plaintiff had a history of race-related issues at the high school.  Aside from the
October incidents, there was an incident in 2008 where Brian Giudice, a former District Assistant
Principal, suspected that DC had drawings of "German military symbols" in his locker and had
the lock on DC's locker cut in order to check.   Exh. A, ¶ 43.  On another occasion, in May 2008,
Major Bouldin "reprimanded" DC for reading Mein Kampf. Exh. A, ¶ 48.

5

Plaintiffs claim that, on one occasion, Dr. Hooley told DC that "Life isn't fair."  Id. at ¶ 89.  Dr. Hooley also wrote several letters, which plaintiffs characterize as insinuating that DC is a racist, but, tellingly, plaintiffs do not quote from them.  Id. at ¶ 110.  Plaintiffs make several similar allegations of defamation during the hearings, including that Mr. DeMaio, an Assistant Principal at Valley Central High School kept inaccurate notes of DC's Manifestation Determination Meeting were inaccurate.  Id. at ¶ 140(k).  This appears to be the only allegation regarding Mr. DeMaio.

Plaintiffs also take issue with and make a variety of allegations regarding the conduct of the Superintendent's Hearing, the 504 Committee and the Manifestation Determination hearing, and the handling of DC's 504 plan in general. Id. at ¶ 20-23.  They did not, however, appeal any of these proceedings or decisions to the New York State Commissioner of Education, even though they had already retained an attorney to appeal the matter to the Board of Education.  Id. at ¶ 118.  Plaintiffs allege that an appeal of DC's suspension would have been futile because DC would have graduated by June of 2009 (Exh. A, ¶ 287), and because there is "an apparent bias and appearance of impropriety on the part of the Office of State Review."  Id. at ¶ 292.

BATHROOM GRAFFITI

In February 2009, during DC's suspension period, a death threat was written on one of the bathroom walls in school.  Id. at ¶ 123.  Plaintiffs acknowledge that the February 2009 writings were promptly erased after they were discovered.  See Exh. A. ¶¶  224.  No further threats appeared until late April.  Id. at ¶ 226.  Once TC learned of the April graffiti and reported it to Glenn Taylor, a guidance counselor, id. at ¶ 140(k),  the District conducted an investigation, which included taking writing samples from various students.  Id. at ¶ 233.

Dr. Debra M. Lynker was the Interim Principal of the High School during the Spring 2009 semester, during which DC was suspended from school.  Plaintiffs allege that in May and June of 2009, they wrote to Dr. Lynker regarding the allegedly threatening graffiti that appeared on a bathroom wall in the school.  Id. at ¶ 134-36.  At that time, they also had a meeting with Dr. Lynker to discuss the issue and received a letter from her, advising that the matter had been investigated.  Id.  Despite all the foregoing, plaintiffs allege that the District did not do enough to investigate and deal with the graffiti.

NOTICE OF CLAIM

Plaintiffs served a notice of claim that includes some of the factual allegations contained in the complaint and lists a series of causes of action.  See Exh. B.  The notice of claim does not include any reference to negligence, negligence per se, or negligent supervision.  Id.

## ARGUMENT

### POINT I

### TC AND KC LACK STANDING TO MAINTAIN THIS ACTION ON BEHALF OF DC

As DC has reached the age of majority, plaintiffs TC and KC lack standing to bring claims on behalf of DC, including DC's alleged claims under the First Amendment, Fourteenth Amendment, Section 504, IDEA, Title VI, and various state laws.  These claims should, therefore, be dismissed for lack of standing.

To have Article III standing, a plaintiff must show three "irreducible" elements (1) injury-in-fact, which is a concrete and particularized harm to a legally protected interest; (2) causation in the form of a fairly traceable connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief.  W.R. Huff Asset v. Deloitte & Touche LLP, 549

F.3d 100, 106-07 (2d Cir. 2008) (citing Lujan v. Defenders, 504 U.S. 555, 560-61 (1992).

"These requirements ensure that a plaintiff has a sufficiently personal stake in the outcome of the

suit so that the parties are adverse."  Id. (citing Baker v. Carr, 369 U.S. 186 (1962)).

Plaintiffs TC and KC were not subjected to the defamation, discrimination, or student

harassment alleged in the complaint.  They did not personally suffer any concrete and

particularized injury-in-fact to any legally protected interest, certainly not one caused by

defendants.  Thus, TC and KC's claims should be dismissed, as they lack standing to assert

claims on their own behalf.  They also lack standing to assert claims on behalf of DC, who has

attained the age of majority.

**POINT II**

**PLAINTIFFS' INEXCUSABLE FAILURE TO EXHAUST STATE ADMINISTRATIVE
REMEDIES DEPRIVES THE COURT OF SUBJECT MATTER JURISDICTION OVER
PLAINTIFFS' IDEA, SECTION 504 AND ADA CLAIMS**

Plaintiffs never appealed DC's suspension to a state administrative agency.  Nor did they

ever seek relief for the school's alleged failure to update DC's 504 plan.  This failure to exhaust

administrative remedies is fatal to their IDEA, Section 504 and ADA claims.  Though plaintiffs

try to excuse this failure as "futile," they fail to make any legally sufficient showing of futility.

**A.  Plaintiffs Failed to Exhaust Administrative Remedies, Depriving This Court of
Subject Matter Jurisdiction Over The IDEA-Related Claims.**

"The IDEA requires that states offer parents of a disabled student an array of procedural

safeguards designed to help ensure the education of their child." Polera v. Bd. Of Educ. Of

Newburgh Enlarged City S.D., 288 F.3d at 482 (citing 20 U.S.C. § 1415(a)).  To this end, New

York State offers parents the ability to "initiate a hearing on matters relating to the identification,

evaluation or educational placement of a student with a disability, or the provision of a free

appropriate public education to the child." 8 N.Y.C.R.R. § 200.5(i)(1) (emphasis added).   The

State also provides an appeal process where "[a] review of the decision of a hearing officer ...

may be obtained by either the parent or the board of education by an appeal to a State review

officer of the State Education Department." 8 N.Y.C.R.R. § 200.5(j)(1).   A claimant's failure to

take advantage of this process, and, thereby, to exhaust these administrative remedies deprives

the court of subject matter jurisdiction. Cave v. East Meadow U.F.S.D., 514 F.3d 240, 245 (2d

Cir. 2008); Polera, 288 F.3d at 483.

     "Importantly, complainants must overcome this significant procedural hurdle not only

when they wish to file a suit under the IDEA itself, but also whenever they assert claims for

relief *available* under the IDEA, regardless of the statutory basis of their complaint." Cave, 514

F.3d at 246 (emphasis in original).

     In Polera, plaintiff, a visually impaired former student, sought relief under the ADA and

the Rehabilitation Act for a school district's alleged failure to provide her with, *inter alia*,

adequate tutoring services.   The court held that the IDEA exhaustion requirement applied to

plaintiff's non-IDEA claims because, the "IDEA is intended to remedy precisely the sort of

claim made by [plaintiff]: that a school district failed to provide her with appropriate educational

services." Id. at 488.   See also "BD" v. DeBuono, 130 F.Supp.2d 401, 428 (S.D.N.Y. 2000)

("plaintiffs should not be allowed to avoid the administrative requirements of IDEA by claiming

only monetary damages or other relief not available under IDEA"); Hope v. Cortines, 872

F.Supp. 14, 17 (E.D.N.Y. 1995) (a plaintiff "cannot escape IDEA's exhaustion requirement by

drafting a complaint artfully avoiding an IDEA claim where IDEA offers plaintiffs the very relief

they seek").   The court reasoned, "Where, as here, a full remedy is available at the time of

injury, a disabled student claiming deficiencies in his or her education may not ignore the

administrative process, then later sue for damages." <u>Id.</u>   The <u>Polera</u> court concluded that it lacked jurisdiction because plaintiff had failed to exhaust her administrative remedies.

In the present case, plaintiffs allege that the District failed to properly administer DC's 504 plan, improperly conducted a Manifestation Determination Meeting in December 2008, and temporarily denied DC a tutor during his suspension.  These are precisely the sort of claims for which relief is available under the IDEA and, thus, for which plaintiffs must pursue and exhaust state administrative remedies before they may bring claims for money damages.   Plaintiffs readily admit that they did not pursue such administrative remedies.  <u>See</u> Exh A., at ¶ 287.  This Court, therefore, lacks subject matter jurisdiction over any IDEA, Section 504 and ADA claims.

## B.  Plaintiff Cannot Show That Attempting to Exhaust Administrative Remedies Would Have Been Futile.

Plaintiffs allege that they are excused from the strict exhaustion requirement because an appeal to the N.Y.S. Commissioner of Education would have been futile.  While exhaustion may be excused where it would be futile to resort to the IDEA's due process procedures, <u>see</u> <u>Murphy v. Arlington CSD Bd. of Educ.</u>, 297 F.3d 195, 199 (2d Cir. 2002), there is no indication here that any appeal would have been futile.  The burden of proving futility falls on the party seeking to avoid exhaustion.  <u>See</u> <u>Polera</u>, 288 F.3d at 488 n. 8.  Plaintiffs cannot meet this burden.

Plaintiffs allege, in essence, that they weighed the possibility of an appeal, and decided against it.  They claim an appeal of DC's December 2008 suspension would have been futile because DC would have graduated by June of 2009, Exh. A, ¶ 287, and because there is "an apparent bias and appearance of impropriety on the part of the Office of State Review."  <u>Id</u>. at ¶

292.[2]   Such bare allegations of futility are inadequate as a matter of law.  See Schlude v. Northeast Cent. Sch. Dist., 892 F. Supp. 560, 567 (S.D.N.Y. 1995) ("Pursuing an administrative appeal will of course take time. Nevertheless, conclusory allegations that the state procedures are overly cumbersome and ineffective are not sufficient to support a finding of futility.")

Plaintiffs cannot decide for themselves whether they should be required to seek administrative review.  "The Second Circuit and other courts have emphasized that giving plaintiffs control over whether their claims are subject to the exhaustion requirement defeats the requirement's purpose."  Gardner v. Uniondale Pub. Sch. Dist., 2008 WL 4682442 (E.D.N.Y., 2008) see also Polera, 288 F.3d at 490 ("[W]e reiterate our holding that disabled-student plaintiffs, like Polera, should not be permitted to 'sit on' live claims and spurn the administrative process that could provide the educational services they seek, then later sue for damages"); Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 63 (1st Cir. 2002) (finding that "even after graduation, compensatory education is an available remedy" and that "the entire matter of timing is largely within a plaintiff's control.... It would be a hollow gesture to say that exhaustion is required-and then to say that plaintiffs, by holding back until the affected child graduates, can evade the requirement.") (citation omitted);  Ruecker v. Sommer, 567 F.Supp.2d 1276, 1297 (D.Or. 2008) (graduation does not render exhaustion futile) (collecting cases).

In essence, plaintiffs would ask this Court to rule that the exhaustion requirement does not apply when the aggrieved student is a senior in high school or when he feels that a state

---

[2] In their Amended Complaint and Exhibits attached thereto, plaintiffs make a series of allegations against the Office of State Review and State Review Officer Kelly.  These entities are not a party to this litigation and this office does not represent them.  In any event, as plaintiffs failed to even attempt an administrative appeal, they lack standing to challenge this agency's procedures and their allegations with regard to the agency are little more than speculation.

agency might be biased in some way.  Such a rule would entirely defeat the purpose and efficacy of the exhaustion requirement.

Plaintiffs have failed to provide any grounds for a finding of futility and, thus, cannot excuse their failure to exhaust administrative remedies.  Their IDEA, Section 504, and ADA claims must, therefore, fail as a matter of law.

## POINT III

### PLAINTIFFS' ADA AND SECTION 504 CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS FAIL BECAUSE THOSE STATUTES DO NOT PROVIDE FOR INDIVIDUAL LIABILITY

It is well-established that neither Title II of the ADA nor Section 504 provides for individual capacity claims. See Garcia v. S.U.N.Y. Health Svcs. Ctr., 280 F.3d 98, 107 (2d Cir. 2001). See also Hartnett v. Fielding Graduate Inst., 400 F. Supp.2d 570, 575 (S.D.N.Y. 2005). Thus, all ADA and Section 504 claims must be dismissed as against the individual defendants.

## POINT IV

### THE EQUAL PROTECTION AND TITLE VI CLAIMS ARE UNSUSTAINABLE

**A. Equal Protection Claims Against the District and Individuals in Official Capacity Are Subsumed By Plaintiffs' Title VI Claims**

Plaintiffs cannot maintain § 1983 racial harassment and hostile environment claims against the District and District employees in their official capacity as these claims are subsumed by their Title VI claims.

42 U.S.C. § 1983 does not create substantive rights, it merely provides a mechanism to allow a plaintiff to bring suit for the violation of a federal right.  Although a plaintiff may sue under § 1983 for violations of federal statutory rights as well as constitutional rights, § 1983 does not allow suit for the violation of all federal rights.  In this regard, the United States Supreme

Court has found that, when the remedial device set forth in a particular Act is sufficiently comprehensive, it may demonstrate Congress' intent to preclude the remedy of bringing suit under § 1983.  See Bruneau v. South Kortright CSD, 163 F.3d 749, 756 (2d Cir. 1998) quoting Middlesex County Sewerage Auth. v. National Sea Clammer Assoc., 453 U.S. 1 (1981).

As a comprehensive legislative device, Title VI provides the exclusive remedial mechanism for claims of racial harassment in the educational environment.   See e.g. Kamal v. Hopmayer, 2006 WL 3197161 at p. 5 (S.D.N.Y. 2006).  Consequently, a plaintiff may not maintain a § 1983 claim and thereby bypass the comprehensive remedial scheme of Title VI.  Id. See also A.W. v. Jersey City Public Schools, 486 F.3d 791, 805 (3d Cir. 2007).

This is precisely the case at bar.  Here, plaintiffs allege that defendants violated 42 U.S.C. §1983 by failing to prevent racial harassment in the educational environment.  See Exh. A. However, Title VI subsumes these causes of action as against the District and all individual defendants in their official capacity.  These claims must, therefore, fail.

## B.  Plaintiffs Fail to State a Title VI Claim Against the District

Plaintiffs' allegations make clear that the District and individual defendants took concrete steps to address the racial harassment DC allegedly experienced.  Thus, plaintiffs cannot show the deliberate indifference necessary to state a claim under Title VI.

Where the alleged discrimination is predicated upon student-on-student harassment, as it is here, Title VI provides for liability only where the educational institution is deliberately indifferent to such an extent that the indifference can be seen as racially motivated.  DT v. Somers Cent. School Dist., 588 F.Supp.2d 485, n. 11 (S.D.N.Y. 2008) (internal quotations omitted and citations omitted); Rodriguez v. N.Y. Univ., 2007 WL 117775, at *6 (S.D.N.Y. 2007); see also Gant ex rel. Gant v. Wallingford Bd. Of Educ., 195 F.3d at 140.

13

Thus, to prevail on a hostile educational environment claim under Title VI, the plaintiff must show that the school "1) had actual knowledge of, and 2) was deliberately indifferent to 3) harassment that was so severe, pervasive and objectively offensive that it 4) deprived the victim of access to the educational benefits or opportunities provided by the school." DT, 588 F.Supp.2d at 493 citing Rodriguez, 2007 WL 117775, at *6; see also Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 650, (1999); Gant, 195 F.3d at 140; K.M. ex rel. D.G. v. Hyde Park Cent. Sch. Dist., 381 F.Supp.2d 343, 359 (S.D.N.Y. 2005).

## 1. District was Not Deliberately Indifferent to the Cafeteria, Hallway, and Bus Incidents

Plaintiffs allege that on October 28, 2008, DC was confronted by a minority student in the cafeteria during his 8th period lunch and that, while en route to his 9th period class, DC was again confronted by several minority students in an aggressive manner. See Exh. A. ¶¶ 192, 193. Defendant Avella then advised plaintiff that the use of the term "black" might be deemed derogatory by some, and DC's parents were promptly notified of the incident. Id. at ¶ 201.

Immediately after the cafeteria incident, plaintiff's lunch period was changed. Id. at ¶ 221. Additionally, the parents of two students who witnessed the incident were asked to come into school the following day to speak with then-principal Avella. Id. at ¶ 201.

Plaintiffs admit that they do not know "whether the parents of the minority students were also directed to go into the school to speak to then-principal Avella." Id. at ¶ 202. They acknowledge, however, that they were told that no one would be punished for that particular incident, that the school had taken proper steps to curb further inappropriate behavior and that Avella expected all parties involved to stop any similar future behavior. Id. at ¶ 204.

14

Indeed, the following day, when rumors surfaced that the minority students might retaliate against DC during the Friday night football game, DC was warned about the rumors and advised to stay away from the game.  Defendant Vice Principal Balducci also called TC and warned him about the rumors surrounding the football game.  Id. at ¶ 209.

Then, on the day of the game, DC was again called into the principal's office and advised, in essence, "the best thing you can do at this point is to go home."  Id. at ¶ 214.  As DC went to get on the bus to go home, two minority students who were involved in the cafeteria and hallway incidents taunted DC.  Id. at ¶ 215.  When defendant Balducci saw this, he told the two students to move on.  Id. at ¶ 216.

In all, plaintiffs' allegations make clear that, far from being deliberately indifferent to alleged harassment, defendants took a number of concrete steps to inform DC's parents and to keep him out of harm's way.  Notably, there is no allegation that DC was in any way harassed after the school took the measures alleged from October 29th to October 31st, 2008.

If anything, it appears plaintiffs allege merely that, though the District acted to remedy the alleged harassment, those actions were somehow insufficient.  First, the lack of any harassment following the three days in October totally belies this claim.  The District took steps to remedy the harassment and the harassment stopped.

Second, the Supreme Court has explicitly rejected the argument that "victims of peer harassment ... have a [Title VI] right to make particular remedial demands" on the school and cautioned that Title VI does not "require funding recipients to 'remedy' peer harassment ... [o]n the contrary, the recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable."  DT, 588 F.Supp.2d at 496 (citing Davis, 526 U.S. at 648-49, 119 S.Ct. 1661.)  The Supreme Court further recognized that "[s]chool administrators will continue to

enjoy the flexibility they require" and that "courts should refrain from second-guessing the disciplinary decisions made by school administrators." Id.

In DT[3], under facts remarkably similar to those in the instant case, the Court held that "Because the question here is not whether the School responded at all, but the adequacy of its response, this Court, as instructed by the Supreme Court, finds it appropriate to give deference to the School's disciplinary judgment with regard to the Cafeteria Incident." DT, 588 F.Supp.2d at 496. The allegations in plaintiff's complaint require the same conclusion here. Having alleged a series of concrete remedial steps taken by the District in response to alleged harassment of DC, plaintiffs' allegations of deliberate indifference are implausible and their claims must fail.

## 2. The District Was Not Deliberately Indifferent to the Graffiti on a Bathroom Wall

Similarly, plaintiffs cannot maintain that the District or the individual defendants were deliberately indifferent to racial harassment in their response to allegedly threatening writings on a school bathroom wall, which writings were made while DC was suspended from school. First and foremost, there is no indication in plaintiffs' complaint that the bathroom wall writings were in any way race-related. Thus, plaintiffs cannot show that it constitutes racial harassment to which Title VI might apply and cannot maintain a Title VI claim on these facts.

Second, defendants were not deliberately indifferent to the bathroom wall writings. Plaintiffs acknowledge that the February 2009 writings were promptly erased after they were discovered. See Exh. A. ¶ 224. No further threats appeared until late April. Id. at ¶ 226. Once TC learned of the April graffiti and reported it to the District, the District conducted an

---

[3] Plaintiffs are no doubt fully familiar with the elements of a Title VI claim and the requirements for deliberate indifference, as their counsel in this case was also plaintiff's counsel in DT v. Somers Cent. School Dist., 588 F.Supp.2d 485, 496 (S.D.N.Y. 2008).

investigation, which included taking writing samples from various students.  Id. at ¶ 233.  The complaint makes clear that these isolated and race-neutral incidents were immediately dealt with in a reasonable manner.  Again, plaintiffs do not allege that defendants failed to respond altogether; they just take issue with the adequacy of the response.  Therefore, even if the graffiti incidents were race-related, this claim would fail.  See DT, 588 F.Supp.2d at n.11.

**3.  The Alleged Harassment and District Response Did Not Deprive DC of Access to the Educational Benefit or Opportunities Provided.**

Even if DC could show that the District was somehow deliberately indifferent to alleged racial harassment, plaintiffs have failed to plead any facts at all that might suggest that DC was deprived of any educational benefits or opportunities as a result.  Plaintiffs cannot maintain a Title VI claim without this necessary element.  See DT, 588 F.Supp.2d at 496.

The alleged October harassment episode lasted for all of three days and did not result in the loss of any access to education.  The February and April 2009 writing on the bathroom wall, similarly, did not result in any such loss.  As plaintiff DC has not lost any educational benefits, he cannot seek redress under Title VI.

**C.  Individuals Are Not Liable Under Title VI**

It is well settled that a defendant cannot be sued in his individual capacity under Title VI because he is not the entity receiving the federal financial assistance.  DT, 588 F.Supp.2d at n. 11 (S.D.N.Y. 2008);  see also Goonewardena v. New York, 475 F.Supp.2d 310, 328 (S.D.N.Y. 2007); Kelly v. Rice, 375 F.Supp.2d 203, 208 (S.D.N.Y. 2005).  Thus, plaintiffs' Title VI claims should be dismissed as against all individual defendants.

**POINT V**

**PLAINTIFFS FAIL TO STATE A FIRST AMENDMENT CLAIM AS DC'S MATERIALLY AND SUBSTANTIALLY DISRUPTIVE SPEECH WAS NOT PROTECTED BY THE FIRST AMENDMENT**

DC's racial slurs, epithets, and inflammatory racial remarks were not entitled to First Amendment protection as it was reasonable for defendants to believe, given DC's history of race-related problems at the school, that the lyrics would materially and substantially disrupt discipline in the school.

Student expression may be regulated where school officials reasonably conclude that the expression would "materially and substantially disrupt the work and discipline of the school." See Wisniewski v. Board of Educ. of Weedsport CSD, 494 F.3d 34, 39 (2d Cir. 2007) citing Tinker v. Des Moines Independent CSD, 393 U.S. 503 (1969).

Moreover, it is well settled that it is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. See Wood v. Strickland, 420 U.S. 308 (1975).  The United States Supreme Court has recognized that "maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures, and has respected the value of preserving the informality of the student-teacher relationship." See New Jersey v. T.L.O., 469 U.S. 325 (1985).

"School officials do not have to wait for actual disruption from the speech before they act; instead, school officials have an affirmative duty to prevent the disruption to the school environment from occurring in the first place."  See DeFabio v. East Hampton U.F.S.D., 2009 WL 3150248 (E.D.N.Y. 2009) at p. 13 citing Doninger v. Niehoff, 527 F.3d 41, 51 (2d Cir. 2008) ("[plaintiff's] argument is misguided insofar as it implies that Tinker requires a showing of actual disruption to justify a restraint on student speech"); Lowery v. Euverard, 497 F.3d 584, 596 (6th Cir. 2007) ("[s]chool officials have an affirmative duty to not only ameliorate the

18

harmful effects of disruptions, but to prevent them from happening in the first place"); LaVine v. Blaine Sch. Dist., 257 F.3d 981, 989 (9th Cir. 2001) ("Tinker does not require school officials to wait until disruption actually occurs before they may act.").  The Court in DeFabio also held:

> [T]o hold otherwise would be to preclude school officials from preventing harm to students, including violence, even where the substantial disruption is reasonably foreseeable. Nothing in the First Amendment, or the Supreme Court jurisprudence interpreting the First Amendment, requires such an absurd rule.

See DeFabio, 2009 WL 3150248 at pp. 13-14 quoting Lowery, 497 F.3d at 596.

On December 5, 2008, DC started to pass around class a document containing racial slurs and epithets.  Exh. A, ¶ 79.  At that time, DC had already been involved in a number of race-related incidents in school, including several confrontations with minority students in October. Under the circumstances, it would have been perfectly reasonable for faculty and administrators to believe that these slurs and epithets would lead to a material and substantial disruption of the school environment.  As such, DC's use of racial slurs was not protected speech under the First Amendment and cannot form the basis of a First Amendment claim.

### POINT VI

### PLAINTIFFS FAIL TO STATE A DUE PROCESS CLAIM

To the extent plaintiffs allege they were deprived of Due Process in DC's suspension, plaintiffs cannot state such a claim as they failed to avail themselves of any post-deprivation remedies.  The availability of an adequate post-deprivation remedy bars a suit alleging a property deprivation as the result of procedural due process violation.  Hudson v. Palmer, 468 U.S. 517, 533 (1984); Larkin v. Savage, 318 F.3d 138 (2d Cir. 2003).  Thus, where "existing state remedies

are adequate to satisfy the requirements of due process, the plaintiff may be precluded from stating a cause of action under § 1983." Parratt v. Taylor, 451 U.S. 527, 543-44 (1981).

Here, plaintiffs failed to appeal DC's suspension to the Commissioner of Education, despite the availability of this remedy.  See N.Y. Educ. Law § 310 ("Any party conceiving himself aggrieved may appeal by petition to the commissioner of education who is hereby authorized and required to examine and decide the same"). Having failed to take advantage of this post-deprivation remedy, plaintiffs are now barred from bringing a Due Process claim.

## POINT VII

### PLAINTIFFS HAVE FAILED TO ALLEGE A MONELL CLAIM

Plaintiff's complaint fails to state a claim for municipal liability under § 1983.  "A municipality may not be held liability under § 1983 simply for the isolated unconstitutional acts of its employees."  Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992) (citing Monell v. Dep't of Soc. Services of the City of N.Y., 436 U.S. 658, 691 (1978)); see also City of Canton v. Harris, 489 U.S. 378, 385 (1989).  To hold a municipality liable, a plaintiff must demonstrate both a constitutional violation and a sufficient causal nexus between the violation and a municipal policy or practice. See Monell, 436 U.S. at 694; Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).

A plaintiff may demonstrate the existence of a policy in a number of ways.  He may (a) allege a formal policy that was officially adopted by the municipality, Monell, 436 U.S. 658; (b) demonstrate the existence of a policy by showing that acts of a municipal agent were part of a widespread practice that, although not expressly authorized, constitutes a custom or usage of which a supervising policymaker must have been aware, City of St. Louis v. Praprotnick, 485 U.S. 112, 127 (1988); or (c) demonstrate that a municipality's failure to provide adequate

training or supervision of its agents rising to the level of deliberate indifference.  <u>Brown v. Board of Comm'rs of Bryan County v. Brown</u>, 520 U.S. 397, 407-08 (1997).  Alternatively, he may bind the municipality through a single act of a final policymaking official. <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483 (1986); <u>Jeffes v. Barnes</u>, 208 F.3d 49, 57 (2d Cir. 2000).  If plaintiff is unable to establish either a policy or custom or a single act of a final policymaking official, municipal liability will not attach.

As set forth above, plaintiffs have failed to adequately allege any violation of their constitutional rights under the Equal Protection Clause or the First Amendment.  Even if the complaint stated a claim for an Equal Protection or freedom of speech violation, plaintiffs have not pleaded allegations sufficient to state a claim against the District or its Board of Education.  Plaintiffs have not alleged facts sufficient to demonstrate that such a violation was the result of any unlawful policy, custom, or practice by the District, much less that any individual with final policymaking authority committed a violation of plaintiffs equal protection or due process rights.

## POINT VIII

### THE INDIVIDUAL DEFENDANTS ARE ALL ENTITLED TO QUALIFIED IMMUNITY FROM SUIT

As a threshold matter, it is axiomatic that qualified immunity is "an immunity from suit rather than the mere defense to liability and is effectively lost if the case is erroneously permitted to go to trial." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985).  The question of qualified immunity is independent from the merits of the underlying action and must be separately examined.  <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), overruled on other grounds, <u>Pearson v. Callahan</u>, 129 S.Ct. 808 (2009); <u>see also</u> <u>Wash. Square Post No. 1212 v. Maduro</u>, 907 F.2d 1288, 1292 (2d Cir. 1990) (citing <u>Mitchell</u>, 472 U.S. at 527-28)).  "Because qualified immunity is "an *immunity from suit* rather

than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis in original).

The application of qualified immunity is important since it is inevitable that "officials will, in some cases, reasonably but mistakenly [take actions later found to be illegal]; in such cases those officials . . . who act in ways they reasonably believe to be lawful, should not be held personally liable." Anderson v. Creighton, 483 U.S. 635, 641 (1987) (citing Malley v. Briggs, 475 U.S. 335, 344-45 (1986)); see also Oliveira v. Mayer, 23 F.3d 642, 648 (2d Cir. 1994).

Qualified immunity shields public officials from liability in civil suits where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson, 129 S.Ct. at 815 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "At the motion to dismiss stage . . . a defendant is entitled to the shield of qualified immunity if the allegations of the complaint fail to state a claim that his conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known." Charles W. v. Maul, 214 F.3d 350, 356-57 (2d Cir. 2000).

It is axiomatic that "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." Harlow, 457 U.S. at 817-818. Yet, bare allegations of malice are the only kind plaintiffs offer with regard to defendants Hooley, Lynker, Balducci, DiMaio, Giudice, Taylor, Bouldin, and Wimmer. Put simply, plaintiff has failed to offer any allegations to suggest that these individual defendants acted unreasonably in light of clearly established constitutional law.

Once the individual defendants are disentangled from the complaint's thicket of superfluous and repetitive storytelling, only the following remains:

22

**A.  Superintendent Richard M. Hooley is Entitled to Qualified Immunity**

Dr. Hooley is the Superintendent of the District.  He presided over DC's disciplinary hearing.  There is nothing to suggest that Dr. Hooley was anything less than impartial in this process.  In ruling on DC's suspension, Dr. Hooley very reasonably "considered plaintiff DC's anecdotal record, and what he deemed was DC's history and notoriety in the school."  Exh. A, ¶ 162.  He found that this history "reasonably forecasts a substantial disruption based on the racially charged and hostile language in the document."  Id.

Plaintiffs claim that, on one occasion, Dr. Hooley told DC that "Life isn't fair."  Id. at ¶ 89.  Dr. Hooley also wrote several letters, which plaintiffs characterize as insinuating that DC is a racist, but, tellingly, they do not quote from.

These allegations do not suffice to state an equal protection claim against Dr. Hooley.  There is no allegation that, in suspending DC, Dr. Hooley treated him differently from any similarly situated person or that he was deliberately indifferent to any racial harassment.

Nor did Dr. Hooley act unreasonably with regard to DC's First Amendment rights.  As argued more fully above, the racist statements for which DC was suspended were not protected by the First Amendment.  Even if they were, however, it was perfectly reasonable for the Superintendent, faced with DC's record of race-related incidents in the school, to "forecast a substantial disruption based on the racially charged and hostile language in the document."  As Dr. Hooley acted reasonably, he is entitled to qualified immunity.

**B.  Dr. Debra M. Lynker Is Entitled to Qualified Immunity**

Dr. Debra M. Lynker was the Interim Principal of Valley Central High School during the Spring 2009 semester, during which DC was suspended from school.  Plaintiffs allege that in May and June of 2009, they wrote to Dr. Lynker regarding the allegedly threatening graffiti that appeared on a bathroom wall in the school.  Id. at ¶¶ 134-36.  At that time, they also had had a

23

meeting with Dr. Lynker to discuss the issue and received a letter from her, advising that the matter had been investigated by the District.  Id.  That is all.

Plaintiffs cannot maintain a federal civil rights action against Ms. Lynker based on these sparse allegations, which do not even appear to attribute any wrongdoing to Ms. Lynker herself. As there is no suggestion that Ms. Lynker acted unreasonably under clearly established law, she should be dismissed form this case.

### C.  Thomas Balducci is Entitled to Qualified Immunity

Thomas Balducci is an Assistant Principal at Valley Central High School.  He was present at meetings with plaintiffs and then-Principal Avella regarding the October incidents of alleged race-related harassment.  He had DC write up what happened during the cafeteria incident, id. at ¶ 31, and tried to get DC to admit that he used racial epithets towards the minority students.  Id. at ¶ 33.  He also intervened when DC was being harassed at the bus stop, and, at one meeting, told DC and his father that the school would "bring down the hammer" if any further incidents occurred.  Id. at ¶ 43.

Nothing in these allegations suggests that Mr. Balducci was deliberately indifferent to the alleged racial harassment that occurred or that he discriminated against plaintiffs in any way.  In fact, plaintiffs' own allegations show that Mr. Balducci acted as a reasonable school administrator, investigating and stopping incidents of harassment.  As such, Mr. Balducci is entitled to qualified immunity from equal protection claims, and, since he was not involved in DC's suspension, the First Amendment claims must fail as well.

### D.  Joseph DeMaio is Entitled to Qualified Immunity

Like Mr. Balducci, Mr. DeMaio is an Assistant Principal at the High School.  In the defamation section of the Complaint, plaintiff alleges that Mr. DeMaio's notes of DC's

Manifestation Determination Meeting were inaccurate.  Id. at ¶ 140(k).  Whatever the merits of plaintiffs' claims, it is clear that this allegation alone cannot form the basis of a constitutional claim against DeMaio.  DeMaio is, therefore, entitled to qualified immunity from suit as well.

### E.  Glen Taylor is Entitled to Qualified Immunity

The only allegation even remotely relating to Mr. Taylor, a Guidance Counselor at the High School is that on April 27, 2009, plaintiff TC reported to Mr. Taylor that a threat had appeared on a bathroom wall.  Id. at ¶ 140(k).  Apparently, then, the only reason Mr. Taylor's name appears in the Complaint at all is that he once had a conversation with plaintiff TC.  As he has not been accused of any wrongdoing at all, Mr. Taylor should be dismissed from this case.

### F.  Brian Giudice is Entitled to Qualified Immunity

Similarly, Brian Giudice, former Assistant Principal at the High School, is entitled to qualified immunity.  The only allegation against Mr. Giudice is that some time in 2008, he had the lock on plaintiff DC's locker cut because he suspected that plaintiff DC had drawings of "German military symbols" in his locker.   Exh. A, ¶ 43.  Such an allegation is insufficient to show that Mr. Giudice acted unreasonably and in violation of clearly established First and Fourteenth Amendment law.  Tellingly, the Amended Complaint does not include this allegation under any cause of action.  Mr. Giudice should, thus, be dismissed from this case.

### G.  Major Robert Bouldin is Entitled to Qualified Immunity

Major Bouldin was DC's Senior Army Instructor for JROTC.   At all times, Major Bouldin acted reasonably under clearly established First Amendment and equal protection law. In May 2008, Major Bouldin "reprimanded" DC for reading Mein Kampf.  Exh. A, ¶48, but the Amended Complaint does not make this a cause of action.

In light of this history and the racially charged October incident, it was more than reasonable for Major Bouldin to refer DC for discipline in December, 2008, when he found DC distributing a document containing racial statements.  Id. at ¶ 116. As discussed above, these documents were not protected speech, but even if they were, plaintiffs do not allege that Major Bouldin actually disciplined plaintiff for the speech, but merely that he referred the matter to the administration.  Beyond this, plaintiffs merely allege that, during DC's disciplinary hearings, Major Bouldin expressed his opinion that DC's lyrics expressed the way he thought and felt. Again such allegations are insufficient to show any unreasonable action in light of clearly established law, and thus Major Bouldin should be dismissed from this case.

### H.  Sergeant Patrick T. Wimmer is Entitled to Qualified Immunity

Sgt. Wimmer was also an Army Instructor for JROTC and should be dismissed as well. The allegations that Sgt. Wimmer (1) lied during the disciplinary hearing when he said DC had used the "n-word," id. at ¶ 115, and (2) discovered threatening graffiti in a school bathroom, even if true, do not suffice to show that Sgt. Wimmer violated plaintiff's equal protection or First Amendment rights.  Thus, Sgt. Wimmer, too, should be dismissed from the lawsuit.

### POINT IX

### PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE NYS HUMAN RIGHTS LAW

Plaintiffs' claims pursuant to the N.Y.S. Executive Law are barred as the District is not an "education corporation or association" within the meaning of Executive Law § 296(4).  See East Meadow U.F.S.D. v. N.Y.S. Div. of Human Rights, 65 A.D.3d 1342, 886 N.Y.S.2d 211 (2d Dept. 2009).  Thus, plaintiff cannot maintain these claims against the District or its employees.

<u>POINT X</u>

**PLAINTIFFS' NEGLIGENT SUPERVISION AND NEGLIGENCE PER SE CLAIMS MUST BE DISMISSED BECAUSE THEY FAILED TO COMPLY WITH GEN. MUN. LAW §§50-E AND 50-I**

The Second Circuit noted, "In a federal court, state notice-of-claim statutes apply to state law claims." <u>Hardy v. N.Y.C. Health & Hosps. Corp.</u>, 164 F.3d 789, 793 (2d Cir. 1999). Under New York law, a notice of claim is a condition precedent to bringing an action against a municipality or any of its officers, agents or employees. New York's General Municipal Law §§ 50-e and 50-i require that plaintiffs asserting state tort law claims against a municipal entity or its employees acting in the scope of employment must (1) file a notice of claim within ninety days after the incident giving rise to the claim, and (2) commence the action within a year and ninety days from the date on which the cause of action accrues. <u>See</u> N.Y. Gen. Mun. Law §§ 50-e and 50-i. These provisions are strictly construed by both state and federal courts. <u>See</u> <u>Baez v. N.Y.C. Health and Hosps. Corp.</u>, 80 N.Y.2d 571, 576 (1992); <u>Phillips v. Village of Frankfort</u>, 31 Misc.2d 815 (Sup. Ct. 1961); <u>Shakur v. McGrath</u>, 517 F.2d 983, 985 (2d Cir. 1975). "Any cause of action or theory of liability not directly or indirectly mentioned in the notice of claim may not be included in a subsequent lawsuit." <u>Kerman v. City of N.Y.</u>, 1999 WL 1022133 at *10 (S.D.N.Y. 1999), rev'd in part on other grounds, 261 F.3d 229 (2d Cir. 2001) (quoting <u>Fincher v. County of Westchester</u>, 979 F. Supp. 989, 1002-03 (S.D.N.Y. 1997)) (internal citations omitted); <u>see also</u> <u>Jewell v. City of New York</u>, 1995 WL 86432 at * 1 (S.D.N.Y. March 1, 1995).

Plaintiffs' Notice of Claim makes no reference to negligence or negligent supervision. <u>See</u> Exh. B. Since plaintiffs failed to mention their negligent supervision and negligence per se claims either directly or indirectly in their Notice of Claim, these claims must be dismissed. <u>Jewell</u>, 1995 WL 86432 at * 1 (S.D.N.Y. March 1, 1995).

27

Finally, in order to assert state law tort claims, a municipal employee must be named as a respondent in the notice of claim.  See Tannenbaum v. City of N.Y., 30 A.D.3d 357, 819 N.Y.S.2d 4, 5 (1st Dept. 2006).   Here, the Notice of Claim does not name any of the individual defendants as respondents and, thus, the state law claims must be dismissed as a matter of law.

**POINT XI**

**PLAINTIFFS FAIL TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Plaintiffs' intentional infliction of emotional distress claim against defendants Hooley, Lynker, Balducci, Giudice, Taylor, Bouldin, the District, and its Board, should be dismissed, as they fail to satisfy any of the elements of the tort.  "A claim of intentional infliction of emotional distress has four elements: 'i) extreme and outrageous conduct; ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; iii) a causal connection between the conduct and injury; and iv) severe emotional distress.'"  Sheikh v. City of N.Y.P.D., 2008 WL 5146645, at *14 (E.D.N.Y. 2008) (quoting Howell v. N.Y. Post Co. 81 N.Y.2d 115, 121 (1993)).  These requirements are "rigorous and difficult to satisfy."  Howell, 81 N.Y.2d at 122.

"To state a claim for intentional infliction of emotional distress, a plaintiff must allege conduct which is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  Sheikh, 2008 WL 5146645, at *14 (quoting Murphy v. Am. Home Prod. Corp., 58 N.Y.2d 293, 303 (1983)).

"Of all of the claims for intentional infliction of emotional distress considered by the New York Court of Appeals, 'every one has failed because the alleged conduct was not sufficiently outrageous.'"  Id. (quoting Howell, 81 N.Y.2d at 122) (citations omitted).  "Those 'few claims' that have been upheld by the Appellate Division have been 'supported by

28

allegations detailing a longstanding campaign of deliberate, systematic, and malicious harassment of the plaintiff.'" Id. (quoting Seltzer v. Bayer, 272 A.D.2d 263, 264-65 (1st Dep't 2000) (allegations that defendant dumped cement on sidewalk in front of plaintiff's house, tossed lighted cigarettes into plaintiff's backyard, threw eggs on his front steps and threatened to paint a swastika on his house were insufficient to support a cause of action.))

Plaintiffs have failed to allege any conduct that might be deemed extreme or outrageous. While the complaint provides a boilerplate recitation of the elements of the claim, plaintiffs have offered no allegations showing any defendant acted with intent to cause, or reckless disregard of a substantial probability of causing, plaintiff severe emotional distress. Even if all of plaintiffs' allegations are accepted as true, they cannot clear the high bar of showing conduct that is "utterly intolerable in a civilized community." Plaintiffs' claim must, therefore, fail.

## POINT XII

### PLAINTIFFS FAIL TO STATE A CLAIM FOR DEFAMATION

Plaintiffs' defamation claims should be dismissed as plaintiffs have failed to plead special damages, a necessary element of a defamation claim. To prove a slander claim under New York law, plaintiff must show (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege. D.F. ex rel. Finkle v. Bd. of Educ. of Syosset Cent. Sch. Dist., 386 F. Supp. 2d 119, 129 (E.D.N.Y. 2005) (citing Albert v. Loksen, 239 F.3d 256, 265 (2d Cir. 2001)).

A plaintiff must plead special damages unless the defamation falls into one of the categories of defamation per se. Dellefave v. Access Temporaries, Inc., 2001 WL 25745 (S.D.N.Y. 2001). Special damages consist of "the loss of something having economic or

pecuniary value which must flow directly from the injury to reputation caused by the defamation," as distinguished from actual damages, which include additional harms such as impairment of reputation and personal humiliation.  Id. citing Celle v. Filipino Reporter Enterprises Inc., 209 F.3d 163, 179 (2d Cir. 2000).  In order to satisfy the special damages requirement, "a plaintiff must set forth an itemized account of her losses; round figures or a general allegation of a dollar amount as special damages will not suffice."  Id.  Absent this pleading, a complaint will be dismissed.  Id.

Here, plaintiffs have not alleged special damages, and their defamation claims do not fall within one of the exceptions to the rule ((i) charging plaintiff with a serious crime; (ii) statements that tend to injure another in trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman). Liberman v. Gelstein, 80 N.Y.2d 429, 434-435 (1992).  Plaintiffs' complaint does not meet any of these exceptions.  Thus, as plaintiffs failed to plead special damages and slander per se, their defamation claims are subject to dismissal.

## CONCLUSION

For all the foregoing reasons, defendants request that this court grant defendants' motion dismissing plaintiff's complaint in its entirety.

Dated: Westbury, New York
     April 26, 2010

SOKOLOFF STERN LLP
Attorneys for all Defendants other than
Joanne Avella

By:   Adam I. Kleinberg
      Leo Dorfman