UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

TC and KC, Individually, and as Parents of DC,

                                    Plaintiffs,

                                                                    HON. CATHY SEIBEL

         -against-

VALLEY CENTRAL SCHOOL DISTRICT;                     Case No.: 09-CIV-9036
VALLEY CENTRAL SCHOOL DISTRICT BOARD
EDUCATION; RICHARD M. HOOLEY,
Individually and as Superintendent of the Valley
Central School District; JOANNE AVELLA,
Individually and as Former Principal of Valley
Central High School; DR. DEBRA M. LYNKER,
Individually and as Former Interim Principal of Valley
Central High School; THOMAS BALDUCCI,
Individually, and as Vice Principal of Valley Central
High School; JOSEPH DIMAIO, Individually, and
Vice-Principal of Valley Central High School; BRIAN
GIUDICE, Individually and as Guidance Counselor of
Valley Central High School; GLENN TAYLOR,
Individually and as Guidance Counselor of Valley
Central High School; MAJOR ROBERT "BOB"
BOULDIN, Individually and as Senior Army Instructor
of Valley Central JROTC, SERGEANT PATRICK T.
WIMMER, Individually and as Army Instructor of
Valley Central ROTC; and Unknown Students 1-100;
Unknown Teachers 1-100; Unknown Administrators
1-100; Unknown Lunch Aides 1-100, the exact names
and identities of whom are not presently known,

                                    Defendants.
--------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## TO DISMISS ON BEHALF OF JOANNE AVELLA

DRAKE LOEB HELLER KENNEDY GOGERTY GABA & RODD PLLC
555 HUDSON VALLEY AVENUE, SUITE 100, NEW WINDSOR, NEW YORK 12553
PHONE: 845-561-0550

Yours, etc.,

DRAKE, LOEB, HELLER, KENNEDY,
GOGERTY, GABA & RODD, PLLC
*Attorneys for Defendant,*
*JOANNE AVELLA*
555 Hudson Valley Avenue
Suite 100
New Windsor, New York 12553
Tel. No.:  (845) 561-0550

Of Counsel:

ADAM L. RODD

DRAKE LOEB HELLER KENNEDY GOGERTY GABA & RODD PLLC
555 HUDSON VALLEY AVENUE, SUITE 100, NEW WINDSOR, NEW YORK 12553
PHONE: 845-561-0550

2

# **TABLE OF CONTENTS**

Page

Table of Cases & Authorities..............................................................................................i-v

ARGUMENT:

I.  OVERVIEW OF UNDERLYING FACTS AND PROCEDURAL
    BACKGROUND.................................................................................................3

II.  OVERVIEW OF ALLEGATIONS IN AMENDED COMPLAINT RELATING TO
     JOANNE AVELLA.............................................................................................4

III.  FEDERAL CLAIMS.............................................................................................9

      (A)  SECOND CAUSE OF ACTION – ALLEGED VIOLATION OF PLAINTIFF'S
           FIRST AMENDMENT RIGHTS.......................................................................9

      (B)  THIRD CAUSE OF ACTION - ALLEGED VIOLATION OF RIGHTS
           UNDER TITLE VI AND SECTION 1983.........................................................13

           (i)   THE PLAINTIFFS §1983 CLAIMS MUST BE DISMISSED AS
                 THEY ARE SUBSUMED UNDER THEIR TITLE VI CLAIMS.............14

           (ii)  PRINCIPAL AVELLA MAY NOT BE HELD LIABLE UNDER
                 TITLE VI.............................................................................................15

           (iii) THE PLAINTIFFS CLAIMS AGAINST PRINCIPAL AVELLA
                 FAIL TO STATE A VIABLE CAUSE OF ACTION AGAINST
                 HER......................................................................................................15

      (C)  NINTH CAUSEE OF ACTION – THE ALLEGED VIOLATION OF THE
           "SAFE AND DRUG-FREE SCHOOLS AND COMMUNITIES ACT"
           IS NON-ACTIONABLE.................................................................................17

IV.  STATE CLAIMS.................................................................................................18

      (A)  ALL STATE CLAIMS ASSERTED AGAINST PRINCIPAL AVELLA
           SHOULD BE DISMISSED BECAUSE SHE WAS NOT NAMED AS A
           RESPONDENT IN THE NOTICE OF CLAIM.............................................18

      (B)  THE PLAINTIFFS' DEFAMATION CLAIM SHOULD BE DISMISSED.............19

      (C)  THE PLAINTIFFS INTENTIONAL INFLICTION OF EMOTIONAL

DRAKE LOEB HELLER KENNEDY GOGERTY GABA & RODD PLLC
555 HUDSON VALLEY AVENUE, SUITE 100, NEW WINDSOR, NEW YORK 12553
PHONE: 845-561-0550

DISTRESS CLAIM IS NON-VIABLE.......................................................22

(D)   THE PLAINTIFFS' CLAIMS UNDER THE HUMAN RIGHTS LAW...............23
SHOULD BE DISMISSED

V.   TC AND KC LACK STANDING TO ASSERT CLAIMS FOR DAMAGES TO
THEMSELVES OR ON BEHALF OF DC.....................................................23

CONCLUSION.............................................................................................24

DRAKE LOEB HELLER KENNEDY GOGERTY GABA & RODD PLLC

555 HUDSON VALLEY AVENUE, SUITE 100, NEW WINDSOR, NEW YORK 12553

PHONE: 845-561-0550

# TABLE OF CASES & AUTHORITIES

Cases:

Albert v. Loksen, 239 F.3d 256 at 265 (2d Cir. 2001)

Anderson v. Creighton, 483 U.S. 635 (1987).

Bayon v. State University of New York at Buffalo, 2001 WL 135817 at 3(W.D.N.Y. 2001)

Bethel School District No. 403 v. Fraser, 478 U.S. 675 (1986)

Bobal v. Rensselaer Polytechnic Institute, 916 F.2d 759 (2d Cir. 1990)

Daimler Chrysler Corp. v. Cuno, 547 U.S. 126 (2006)

Daniels v. Alvarado, 2004 WL 502561 (E.D.N.Y.)

Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 648 (1999)

DeFabio v. East Hampton Union Free School District, 658 F. Supp. 2d 461 at 483 (E.D.N.Y. 2009)

D.F. v. Board of Education of Syosset Central School District, 386 F.Supp.2d 119 (E.D.N.Y. 2005)

Doe v. Board of Education of Penfield School District, 12 Misc.3d 1197(A), 824 N.Y.S.2d 768 (Sup. Ct. 2006)

DT v. Somers Central School District, 588 F. Supp.2d 482 (S.D.N.Y. 2008)

East Meadow Union Free School District v. New York State Division of Human Rights, 65 A.D.3d 1342, 886 N.Y.S.2d 211 (A.D. 2 Dept. 2009)

Ferlito v. County of Suffolk, 2007 WL 4180670 (E.D.N.Y.)

Gant v. Wallingford Bd. of Educ., 195 F.3d 134 (2d Cir. 1999)

Gonzalez v. City of New York, 20 Misc.3d 1130, 872 N.Y.S.2d 690 (Sup. Ct. 2008)

Howell v. New York Post Co., 81 N.Y.2d 1151, 596 N.Y.S.2d 350 (Ct. App. 1991)

Kirch v. Liberty Media Corp., 449 F.3d 388 at 399-400 (2d Cir. 2006)

Leibowitz v. Bank Leumi Trust Co. of New York, 152 A.D.2d 169, 548 N.Y.S.2d 513 (A.D. 2 Dept. 1989)

iii

Liberman v. Gelstein, 80 N.Y.2d 429, 590 N.Y.S.2d 857 [Ct. App. 1992]

Mandrell v. County of Suffolk, 316 F.3d 368 (2d Cir. 2003).

Middlesex County Sewerage Authority v. National Sea Clammers Association, 453 U.S. 1 (1981)

Morgan v. City of New York, 166 F.Supp.2d 817, 819 (S.D.N.Y.2001)

Murphy v. American Home Products Corp., 58 N.Y.2d 293, 461 N.Y.s.2d 232 at 236 (Ct. App. 1991)

Nunez v. A-T Financial Information, Inc., 957 F. Supp. 438 at 441 (S.D.N.Y. 1997)

Rateau v. City of New York, 2009 WL 3148765 (E.D.N.Y.)

Rodriguez v. New York University, 2007 WL 117775 at 6 (S.D.N.Y.)

Roth v. Jennings, 489 F.3d 499 (2d. Cir. 2007)

Sash v. Rosahn, 2009 WL 1683877 (S.D.N.Y.).

Stevenson by Stevenson v. Martin County Board of Education, 93 F. Supp.2d 644 at 649 (E.D.N.C. 1999)

Tannenbaum v. City of New York, 30 A.D.3d 357, 819 N.Y.S.2d 4 at 5 (A.D. 1 Dept. 2006)

Tinker v. Des Moines Independent Community School District, 393 U.S. 503 at 506 [1969])

Torain v. Liu, 2007 WL 2331073 (S.D.N.Y.)

Walia v. Vivek Purmasir & Associates, Inc., 160 F. Supp.2d 380 at 394 (E.D.N.Y. 2000)

White v. Averill Park Cent. School District, 195 Misc.2d 409, 759 N.Y.S.2d 641 (Sup. Ct. 2003)

Wisniewski v. Board of Education of the Weedsport Central School District, 494 F.3d 34 (2d Cir. 2007)

Yap v. Oceanside Union Free School District, 303 F. Supp.2d 284 (E.D.N.Y. 2004)

iv

Statutes:

FRCP 12 (b)(1) and (6)
42 U.S.C. §1983
42 U.S.C. §2000d
20 U.S.C. §7133
20 U.S.C. §7103
N.Y. Education Law §3813(2)
General Municipal Law §50-e
CPLR §1201
CPLR §105(j)

v

DRAKE LOEB HELLER KENNEDY GOGERTY GABA & RODD PLLC
555 HUDSON VALLEY AVENUE, SUITE 100, NEW WINDSOR, NEW YORK 12553
PHONE: 845-561-0550

## I.  **OVERVIEW OF UNDERLYING FACTS AND PROCEDURAL BACKGROUND**

In this action the plaintiff – a white male student referred to as "DC" – claims that he was subject to racially discriminatory and otherwise tortious conduct on the part of the Valley Central School District and its employees during the course of his 2008/2009 senior year at the Valley Central High School.  DC, together with his parents – referred to as "TC" and "KC" – claim that the challenged conduct violated their rights under specified Federal and New York State statutes, the United States Constitution, and State common law.

With respect to the plaintiffs' allegations set forth in their pleadings as they relate to Joanne Avella – a white female who served as the former Principal of the Valley Central High School (and hereinafter referred to as "Principal Avella"), the plaintiffs' claims are limited to alleged conduct on her part which occurred in October of 2008 and December of 2008.

Concerning the October 2008 events, the plaintiffs essentially allege that in response to threats of aggression on the part of minority students directed to DC on October 28, 2008, Principal Avella failed to take "sufficient" measures in response to this occurrence.  Further, with respect to the measures that Principal Avella *did* take during the course of responding to the events of October 28, 2008, the plaintiffs allege that Principal Avella made verbal statements to DC, in the presence of others, which evinced Principal Avella's alleged erroneous belief that DC held racist views.  The plaintiffs also allege that on October 31, 2008 DC was improperly kept and/or called to the Principal's office in response to rumors that minority students planned to retaliate against him, and that Principal Avella otherwise failed to take "sufficient" steps with respect to these

DRAKE LOEB HELLER KENNEDY GOGERTY GABA & RODD PLLC
555 HUDSON VALLEY AVENUE, SUITE 100, NEW WINDSOR, NEW YORK 12553
PHONE: 845-561-0550

3

rumors.

Concerning the December 2008 events, the plaintiffs essentially allege that Principal Avella wrongfully suspended DC for five (5) days in response to being presented with a Disciplinary Referral indicating DC's in-school dissemination of a document containing racist, violent and vulgar language.

The plaintiffs initially commenced this action via the filing of a Complaint with this Court on October 27, 2009 (see Exhibit "A").[1]  Thereafter, and following a pre-motion conference conducted before this Court on January 22, 2010, the plaintiffs filed an Amended Complaint, containing nine (9) separate causes of action, on February 18, 2010 (see Exhibit "B")   Following the service of the Amended Complaint an appearance was entered in this action on behalf of Principal Avella (Docket No. 21), and a briefing schedule for the service of pre-answer motions to dismiss was approved by this Court (Docket No. 23).

## II.   OVERVIEW OF ALLEGATIONS IN AMENDED COMPLAINT RELATING TO JOANNE AVELLA

With respect to the plaintiffs' Amended Complaint, annexed to this answering defendant's moving submissions as Exhibit "B," the plaintiffs' allegations, as they pertain to the Principal Avella, are summarized herein.

At the time of the challenged conduct on the part of Principal Avella at issue in this lawsuit, DC was a white student enrolled in the Valley Central High School, which is a school within the Valley Central School District (Amended Complaint, ¶ 8).  Ms. Avella served as the Principal of the Valley Central High School, but was only involved in "some of the events" underlying the DC's allegations, since her employment ceased

---

[1] The Exhibits referred to in this Memorandum of Law are attached to Attorney's Declaration of Adam L. Rodd, dated April 30, 2010, submitted herewith.

with the District in January of 2009 (Amended Complaint, ¶¶ 14 and 122).

DC alleges that on October 28, 2008, in the cafeteria of High School, he was "confronted" in an unspecified "aggressive" manner by a minority student (Amended Complaint, ¶ 27). Later that same day, DC was again "confronted" in a hallway at the High School by "several" minority students, at which time DC asserts that the minority students called DC derogatory names, and threatened to physically harm both DC and his mother, KC (Amended Complaint, ¶ 28). DC claims that two hall monitors – a Mr. Sherry and a Mr. Wilkinson, as well a science teacher – Anna Leo, are witnesses to the October 28, 2008 hallway incident (Amended Complaint, ¶ 29).

In response to the above-referenced interactions between DC and certain minority students, Principal Avella immediately met with DC, on the October 28, 2008 date, to address same (Amended Complaint ¶¶ 33 and 38). The plaintiffs assert that Principal Avella, in discussing the October 28, 2008 events with DC, took the position that DC's acknowledged statement (to wit, "what are the black kids laughing at") was inflammatory and derogatory, and told DC that he should refrain from using such a reference (Amended Complaint, ¶ 38). DC maintained, however, that the words he said to the minority students were not, in his view, "derogatory or discriminatory" (Amended Complaint, ¶ 37).

In further response to the events of October 28, 2008, Principal Avella met with two other students, on October 29, 2008, to discuss the events of the previous day (Amended Complaint, ¶41). The two other students who Principal Avella met with on October 29, 2008 were white (Amended Complaint, ¶ 41). The plaintiffs claim not to know, one way or the other, if Principal Avella met with the minority students involved

in the October 28, 2008 incidents (Amended Complaint, ¶ 42).[2]

The plaintiffs allege that on October 29, 2008 a meeting with convened at the High School with DC, DC's father – TC, Principal Avella, Vice-Principal Balducci, and Vice-Principal Lee (Amended Complaint, ¶ 43).  At the October 29, 2008 meeting, Principal Avella advised the plaintiffs that neither DC, nor the minority students, would be punished for any of the events which transpired the previous day; that proper steps had been taken to curb further inappropriate behavior; that she (Principal Avella) expected all parties to stop any escalations resulting from the events which occurred on the previous day; and that any further escalation would be met with strict discipline from the school (Amended Complaint, ¶ 41). In this regard, and as a further measure to avoid the potential for an escalation of tensions, DC's lunch period was rescheduled to separate the involved students (Amended Complaint, ¶ 75).

During the October 29, 2008 meeting referenced above, the plaintiffs allege that Principal Avella told DC that his "ideas and morals are disgusting and anyone who believes in the things you do is a despicable human being" (Amended Complaint, ¶ 45). The plaintiffs further allege that, during this same October 29, 2008 meeting, Principal Avella remarked that she empathized with persons of color; that there was a white supremacist in her family who she frequently argued with; that Jesus may have been black; and that DC's "blonde hair and blue eyes won't do you any good in prison. They'd toss you like a salad" (Amended Complaint, ¶¶ 44, 46, 56 and 59).

On October 30, 2008, and in response to learning of rumors that DC and another white student (KG) may be targeted for retaliatory acts by other students, the plaintiffs

---

[2] The plaintiffs' allegations in this regard are contradicted by the plaintiffs' own earlier correspondence sent to the District.  Specifically, in the plaintiffs' prior letter to the District dated May 14, 2009, the plaintiffs acknowledged that Principal Avella issued warnings to all parties involved (see Exhibit "F" to plaintiffs' Petition to file a late notice of claim, which is annexed to Attorney's Declaration as Exhibit "A").

DRAKE LOEB HELLER KENNEDY GOGERTY GABA & RODD PLLC
555 HUDSON VALLEY AVENUE, SUITE 100, NEW WINDSOR, NEW YORK 12553
PHONE: 845-561-0550

6

allege that a school resource officer told both DC and KG that they should not attend a High School football game scheduled for the evening of Friday, October 31, 2008 (Amended Complaint, ¶¶ 60 and 61). The plaintiffs further allege that Vice Principal Balducci telephoned DC's father on the October 30, 2008 date to alert him of the rumors of retaliation (Amended Complaint, ¶ 62).

On October 31, 2008 DC's father, TC, alleges that he went to the High School and met with Principal Avella and Army Instructor Sergeant Wimmer (Amended Complaint, ¶ 64). At that meeting TC claims that he told Principal Avella and Army Instructor Wimmer that that he was concerned over the manner in which the rumors of retaliation against DC were being handled (Amended Complaint, ¶ 64). Following this meeting, DC was brought to the office of the High School and, and he admitted that he was informed that he was being kept there for his safety (Amended Complaint, ¶ 67).

Upon leaving the office on October 31, 2008, and entering his bus to go home, DC claimed that two minority students taunted DC by telling DC to get off the bus and fight (Amended Complaint, ¶ 69). In response to the conduct of the two minority students, Vice Principal Balducci advised the two minority students to move on (Amended Complaint, ¶ 70). The plaintiffs concede that neither a fight, nor further threats ensued following Vice Principal Balducci's directive to the two minority students, and the plaintiffs otherwise allege that Principal Avella was not advised to the October 31, 2008 bus incident (Amended Complaint, ¶¶ 69 to 72). Nevertheless, during a meeting shortly following the events of the previous week, TC alleges that he told Vice Principal Balducci and Principal Avella that the District's conduct "constituted discrimination, defamation, harassment and resulted in a hostile educational environment" (Amended Complaint, ¶ 73).

DRAKE LOEB HELLER KENNEDY GOGERTY GABA & RODD PLLC
555 HUDSON VALLEY AVENUE, SUITE 100, NEW WINDSOR, NEW YORK 12553
PHONE: 845-561-0550

7

More than a month following the events which occurred between October 28 to October 31, 2008, DC brought to the High School a document he claims to have co-written with another student containing the lyrics to a rap song, which he showed to other students (Amended Complaint, ¶¶ 77 to 79, and Exhibit "D" annexed to Attorney's Declaration). The document brought to the school by DC and shown to other students contained racial slurs, epithets and inflammatory remarks, and as such, were in violation of District rules (Amended Complaint, ¶ 79, and Exhibit "D" annexed to Attorney's Declaration). Accordingly, Principal Avella issued a notice suspending DC for a period of five (5) days (Amended Complaint, ¶¶ 79 to 80, and Exhibit "F" annexed to Attorney's Declaration). The plaintiffs further allege that Principal Avella recommended to the Superintendant that DC be considered for a suspension in excess of five (5) days (Amended Complaint, ¶ 84). Principal Avella testified at the Superintendent's Hearing (Amended Complaint, ¶ 114), together with various other witnesses (Amended Complaint, ¶¶ 115 and 116). On December 22, 2008 Superintendent Hooley suspended DC for the remainder of the 2008/2009 school year (Amended Complaint, ¶ 109).

Although the plaintiffs have alleged various additional acts of wrongdoing occurring in 2009, and after the Superintendent's Hearing culminating in DC's suspension (Amended Complaint, ¶¶ 122 to 137), none of these additional allegations pertain to Principal Avella, who ceased working at the District in January of 2009 (Amended Complaint, ¶ 122).

The plaintiffs' Amended Complaint contains nine (9) causes of action. Of the nine (9) causes of action, the plaintiffs' fifth cause of action is directed to the Valley Central School District and the Valley Central School District Board of Education only, and the remaining eight (8) causes of action are pled against either "all the defendants

named herein" or against specified named defendants inclusive of Principal Avella. Of these remaining eight (8) causes of action, the plaintiffs have asserted three (3) causes of action asserting the violation of rights protected under the United States Constitution or Federal Statutes – to wit, the second cause of action (which alleges the violation of the plaintiffs' First Amendment freedom of speech rights); the third cause of action (which alleges the violation of the plaintiffs' rights under Title VI of the Civil Rights Act of 1964 as well as a §1983 claim for the alleged violation of the plaintiffs' equal protection rights under the Fourteenth Amendment); and the ninth cause of action (which alleges a violation of the plaintiffs' rights under 20 U.S.C. §7133). The remaining causes of action are the plaintiffs' pendent claims which purport to assert causes of action under State law – to wit, the first cause of action (which alleges a claim for defamation); the fourth cause of action (which alleges a claim of discrimination under the New York State Executive Law – a/k/a the "Human Rights Law"); the sixth cause of action (which alleges a claim for the intentional infliction of emotional distress), the seventh cause of action (which alleges a claim for negligent supervision), and the eighth cause of action (which alleges a claim based on a hostile educational environment).

As shall be detailed below, pursuant to FRCP 12(b)(1) and (6), the plaintiffs have failed to state any viable claims against Principal Avella, and all causes of action pled against her should be dismissed.

## III.     <u>FEDERAL CLAIMS</u>

(A)     <u>SECOND CAUSE OF ACTION – ALLEGED VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS</u>

The plaintiffs' second cause of action alleges that DC's freedom of speech rights, protected under the First Amendment, were infringed upon by the named defendants,

including Principal Avella, by reference to the steps taken by the defendants in response to DC's December 5, 2008 in-school dissemination of a document containing vulgar, violent and racially charged content.  With respect to Principal Avella's involvement in the plaintiff's First Amendment claim, the plaintiffs merely alleges that upon receipt of Major Bouldin's December 5, 2008 Discipline Referral,  she issued, on that same date, a notice to the plaintiffs charging DC with exhibiting  disruptive behavior, and suspending him for five (5) days (Amended Complaint, ¶¶ 158 to 159).  The conduct complained of on the part of Principal Avella is not, however, actionable.

While it is true, of course, that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate" (Tinker v. Des Moines Independent Community School District, 393 U.S. 503 at 506 [1969]), it is well-settled that in the school setting no First Amendment violation will be found by the prohibition of a student's communications found to be lewd, vulgar or indecent.  Bethel School District No. 403 v. Fraser, 478 U.S. 675 (1986).  Likewise, the prohibition of student speech which is reasonably deemed to create a risk of material and substantial interference with the work and discipline of a school also does not violate a student's First Amendment free speech rights. Wisniewski v. Board of Education of the Weedsport Central School District, 494 F.3d 34 (2d Cir. 2007)(holding that the suspension of a student who transmitted, over the internet, the depiction of a violent act against teacher, did not violate his First Amendment free speech rights).

Here, there can be no question that the rap song brought into school by DC, and then shown to others, is not entitled to First Amendment protection by reference to its blatant racist, violent and vulgar content (see Exhibit "D").[3]  Specifically, the rap song

---

[3] Although consideration of a motion under FRCP 12(b)(6) is normally limited to the allegations set forth

includes the following language:

- "I'm sittin in my house, trying to get some rest peacefully, when all of a
  sudden I hear niggas outside, they got a beef with me, so I put on my
  boots and go to stomp some heads;"

- "Oh my god four got left behind, and while it was gone, I murdered
  another ryhme, niggas talkin shit so I pull out my nine, I got tech like
  bruce lee and hulk combined, talk shit and I'ma find, any way to get you,
  this is an area in which I shine, murder for hire, niggas lives expire"

- "That why I can tell when ya'll niggas fake, you run up on the block hide
  your plastic glock, and start chattin with da jakes, a disgrace, leave you
  by the lake, with cement in ya shoes, fuckin with me you'll lose, you'll
  only get the bad news, I'm a rude dude, don't fuck with this, I'll spray
  the clip and leave your body motionless, my heart stay emotionless,
  when niggas start runnin they mouth like an old car engine, car's gone
  still but still just spits out shit."

- "And nigga Ima flip, got my home boys on standby, waitin for this shit,
  to pop off, look wrong in my direction, and your face'll be up your ass,
  completely new perspective, take you out like yesterdays trash, Ima whip
  you like a slave"

- "Rollin up the block, sprayin shots, but I don't use a glock, I use the
  A.K., get you fucked up, when I cock and reload"

within the complaint itself, documents other than the complaint are appropriate for judicial review on a 12(b)(6) dismissal motion where, as here, the complaint refers to the documentary evidence, and where such documentary evidence is otherwise integral to the complaint. Roth v. Jennings, 489 F.3d 499 (2d. Cir. 2007). Here, the rap song brought into school, which DC admits that he gave to another student – JR - clearly satisfies this standard, and is referred to in the plaintiffs' Amended Complaint in ¶¶ 77 to 79, 116, 120, and 148.

- "And when I got beef I go give that nigga my knee, to his face, now he's disgraced but he don't deserve to be, he's just negative space"

- "Nigga I've never been surer, I am the new Fuerher"

In the case at bar, all that is alleged against Principal Avella is that upon receipt of the December 5, 2008 Disciplinary Referral from Major Bouldin indicating DC's dissemination, in school, of the above-referenced document containing racial slurs, epithets and inflammatory remarks, she suspended him (Amended Complaint, ¶¶ 158 to 160). Because the speech in question simply is not protected under the First Amendment in a school setting as a matter of law, Principal Avella's challenged conduct, as pled, is not actionable D.F. v. Board of Education of Syosset Central School District, 386 F.Supp.2d 119 (E.D.N.Y. 2005)(holding that dismissal of claim against school district was appropriate under 12[b][6] where student was suspended for writing story containing graphic violent and sexual content, since such content is not, in a school setting, entitled to First Amendment protection).

Not only is the inflammatory racial, violent and vulgar content of the document containing DC's rap lyrics not entitled to First Amendment protection in a school setting, Principal Avella may not be found liable for acting upon same pursuant to the doctrine of "qualified immunity." Under the doctrine of "qualified immunity" a government actor who performs a discretionary function will be shielded from liability if his conduct did not violate the plaintiff's clearly established rights, or, if it would have been objectively reasonable for the actor to believe that his conduct did not violate the plaintiff's rights. Mandrell v. County of Suffolk, 316 F.3d 368 (2d Cir. 2003). To determine whether an official protected by qualified immunity may be held personally liable, the clearly established rules in existence when the action was taken must be analyzed to determine

whether the challenged action in fact violated a specifically defined and recognized Constitutional right. Anderson v. Creighton, 483 U.S. 635 (1987).

Here, at the time that Principal Avella acted upon the Disciplinary Referral regarding DC's dissemination of a document containing plainly racist, violent and vulgar content, the law was quite clear that the document DC generated and brought into school to show to others simply was not accorded First Amendment protection in a school setting. See, Bethel School District No. 403 v. Fraser, supra; Wisniewski v. Board of Education of the Weedsport Central School District, supra; D.F. v. Board of Education of Syosset Central School District, supra. Indeed, even if the plaintiffs could, theoretically, establish some sort of First Amendment violation by reference to the actions taken in response to the document DC brought into school, Principal Avella's actions nevertheless remain protected under the "qualified immunity" doctrine. As stated in DeFabio v. East Hampton Union Free School District, 658 F. Supp. 2d 461 at 483 (E.D.N.Y. 2009)(internal citations omitted):

> "Even if [the defendant] did violate [the plaintiff's] First Amendment right to free speech, summary judgment would still be appropriate because she is entitled to a qualified immunity defense as a matter of law. *Tinker* established a right for students to exercise *non-disruptive* expression anywhere on school grounds. At some point, however, expressive speech crosses the line into "disruptive" and thus gives way to school officials' ability to maintain order and discipline in an educational environment. The clearly established right is that students may not be punished or stopped from engaging in *non-disruptive* speech. Where that expression may be fairly characterized as "disruptive," however, it crosses into a constitutional gray area in which school officials are reasonable in their belief that they are acting lawfully to put a stop to the disruptive student behavior."

(B)  THIRD CAUSE OF ACTION - ALLEGED VIOLATION OF RIGHTS UNDER TITLE VI AND SECTION 1983

The plaintiffs' third cause of action, as it relates to Principal Avella, alleges, in

sum, that DC was discriminated against, on account of his race, in connection with the manner in which Principal Avella handled threats of minority students directed towards him during the time period of October 28th to October 31st, 2008.  The plaintiffs' third cause of action alleges that the conduct of Principal Avella and the other codefendants violated Title VI of the Civil Rights Act (42 U.S.C. §2000d), and also asserts a claim under 42 U.S.C. §1983 seeking damages based on the violation of the plaintiffs' rights to equal protection under the Fourteenth Amendment.  For the reasons set forth below, the plaintiffs' third cause of action must be dismissed against Principal Avella.

(i)   THE PLAINTIFFS §1983 CLAIMS MUST BE DISMISSED AS THEY ARE
      SUBSUMED UNDER THEIR TITLE VI CLAIMS

The rule is well-settled that where the remedial devices provided in a particular federal statute are sufficiently comprehensive, a party seeking recovery under such a statute may not invoke an additional claim under 42 U.S.C. §1983 based upon the very same facts.  Middlesex County Sewerage Authority v. National Sea Clammers Association, 453 U.S. 1 (1981).  Applying this doctrine to this case, the courts have repeatedly found that where, as here, a party claims that the conduct of a school district and/or its employees violated Title VI, a §1983 claim for relief grounded on the very same facts may not be maintained because  the sufficiently comprehensive nature of Title VI precludes an additional §1983 cause of action.  DT v. Somers Central School District, 588 F. Supp.2d 482 (S.D.N.Y. 2008); Bayon v. State University of New York at Buffalo, 2001 WL 135817 at 3(W.D.N.Y. 2001)("Where Congress has established enforcement mechanisms containing remedial devices that are sufficiently comprehensive, as it has done with  Title VI…., those enforcement mechanisms may not be bypassed by bringing suit under section 1983") .

(ii)    PRINCIPAL AVELLA MAY NOT BE HELD LIABLE UNDER TITLE VI

With respect to the plaintiffs' claims against Principal Avella based on her

violation of Title VI (42 U.S.C. §2000d), same should be summarily dismissed because

only the entity which receives federal financial assistance, and not the individual

employees of the entity, may be properly named as a defendant.  DT v. Somers Central

School District, 588 F.Supp.2d 485 (S.D.N.Y. 2008); Rodriguez v. New York University,

2007 WL 117775 at 6 (S.D.N.Y.)("Title VI claims cannot be brought against individual

defendants")

(iii)    THE PLAINTIFFS CLAIMS AGAINST PRINCIPAL AVELLA FAIL TO
         STATE A VIABLE CAUSE OF ACTION AGAINST HER

Assuming that a claim against Principal Avella could be brought against her

individually, the plaintiffs' Amended Complaint simply does not plead sufficient facts

against her to establish that her conduct is actionable.  In order to establish a viable

Fourteenth Amendment equal protection claim under §1983 based on a school district's

claimed inadequate response to complaints of harassment, a plaintiff must show

"deliberate indifference" on the part of the defendants.  Yap v. Oceanside Union Free

School District, 303 F. Supp.2d 284 (E.D.N.Y. 2004).  The standard for demonstrating

"deliberate indifference" is a demanding one.  Specifically, the courts have recognized

that "deliberate indifference" is "not a mere reasonableness standard" that transforms

every school disciplinary decision into a jury question.  Davis v. Monroe County Bd. of

Educ., 526 U.S. 629, 648 (1999).  Instead, to demonstrate "deliberate indifference" the

challenged conduct must not only be "clearly unreasonable in the light of known

circumstances," it must also be of such a nature that a finder of fact could infer that the

defendant *intended* the discrimination to occur.  Gant ex rel. Gant v. Wallingford Bd. of

Educ., 195 F.3d 134 (2d Cir. 1999); Yap v. Oceanside Union Free School District, 303 F. Supp.2d 284 at 295 (E.D.N.Y. 2004)("Deliberate indifference, in this context, requires something more than a proffer indicating the ultimate inadequacy of preventative and curative measures.  Instead, the measures taken must be so inadequate that a degree of discriminatory intent may be inferred – allowing the trier of fact to conclude that Defendants intended for the discrimination to occur").

Applying this demanding standard, it is difficult to understand the claim that the conduct of Principal Avella somehow rose to the level of "deliberate indifference" in this case.  As pled, the plaintiffs concede that in response to the October 28, 2008 cafeteria and hallway incidents, Principal Avella immediately responded that same day by meeting with DC (Amended Complaint, ¶38).  Later, on the day following the incident, the plaintiffs concede that Principal Avella met with two witnesses to the incident (Amended Complaint, ¶41), and also with DC's father, wherein DC and his father were told that the school had taken proper steps to curb further inappropriate behavior; that all parties were expected to cease any escalations stemming from the incident; and that any further escalations would be met with strict discipline (Amended Complaint, ¶43).  In addition, and as a further measure to prevent future confrontations, DC's lunch period was changed (Amended Complaint, ¶221).  Clearly, although the plaintiffs may disagree with the methods used by Principal Avella to deescalate the tensions brought to her attention between DC and other students, the plaintiffs' pleadings just do not show or allege conduct that is so "clearly unreasonable" that it infers that Principal Avella actually "intended for the discrimination to occur." Yap v. Oceanside Union Free School District, 303 F. Supp.2d 284 at 295 (E.D.N.Y. 2004).

DRAKE LOEB HELLER KENNEDY GOGERTY GABA & RODD PLLC
555 HUDSON VALLEY AVENUE, SUITE 100, NEW WINDSOR, NEW YORK 12553
PHONE: 845-561-0550

16

(C)   NINTH CAUSE OF ACTION – THE ALLEGED VIOLATION OF THE "SAFE
      AND DRUG-FREE SCHOOLS AND COMMUNITIES ACT" IS NON-
      ACTIONABLE

The plaintiffs' ninth cause of action is essentially duplicative of the claims

asserted in the plaintiffs' third cause of action (i.e. both the ninth and third causes of

action contain claims based on the alleged violation of Title VI, and  a Fourteenth

Amendment equal protection claim made actionable under §1983).  However, and as

noted above, Principal Avella cannot be held liable under Title VI, and, to the extent a

claim could be asserted against her individually, her conduct did not rise to the level of

being "deliberately indifferent" to the plaintiffs' equal protection rights  under §1983.

Beyond this, the plaintiffs' ninth cause of action also asserts a claim that all

defendants also violated 20 U.S.C. §7133 – a provision of a statute known as the "Safe

and Drug-Free Schools and Communities Act."  The plaintiffs' anomalous reliance on

this statute is misplaced.

As cited in the plaintiffs' Amended Complaint, 20 U.S.C. §7133 merely provides

that those funds made available under the "Safe and Drug-Free Schools and Communities

Act" may be used as grants to local educational agencies, and for specified purposes (i.e.

to reduce and prevent hate crimes).  Nothing in the statute, however, suggests that the

alleged breach of its provisions can serve as a vehicle for asserting a private cause of

action under §1983, and the case law addressing this issue has so held.  Stevenson by

Stevenson v. Martin County Board of Education, 93 F. Supp.2d 644 at 649(E.D.N.C.

1999)("The Safe Schools Act is merely a grant program, with a stated purpose to 'support

grant programs to meet the seventh National Education goal by preventing violence in

and around schools…through the provision of Federal assistance to…States for Grants…'

20 U.S.C. §7103.  To contend that this act placed defendants on notice that they could be

held liable for student on student violence is severely misplaced").

## IV.    STATE CLAIMS

(A)    <u>ALL STATE CLAIMS ASSERTED AGAINST PRINCIPAL AVELLA
SHOULD BE DISMISSED BECAUSE SHE WAS NOT NAMED AS A
RESPONDENT IN THE NOTICE OF CLAIM</u>

The plaintiffs' notice of claim named as respondents only the Valley Central

School District, the Valley Central School District Board of Education, and the Town of

Montgomery Police Department (see Exhibit "A" annexed to Attorney's Declaration

submitted on behalf of Principal Avella).  Principal Avella <u>is not</u> however named as a

respondent.

Pursuant to Education Law §3813(2), an action founded upon a tort may not be

maintained against a school district or an employee thereof "unless a notice of claim shall

have been made and served in compliance with section fifty-e of the General Municipal

Law."  Section 50-e(1)(a) of the General Municipal Law in turn requires, in pertinent

part, that a notice of claim be served in any case founded upon tort "as a condition

precedent to the commencement of an action against a public corporation...or any

officer, appointee or employee thereof..."

In accordance with these statutes, the rule is well-settled that an action on a State

claim sounding in tort against a municipal employee may not be brought unless that

municipal employee has been named in the notice of claim.  <u>Rateau v. City of New York</u>,

2009 WL 3148765 (E.D.N.Y.); <u>Tannenbaum v. City of New York</u>, 30 A.D.3d 357, 819

N.Y.S.2d 4 at 5 (A.D. 1 Dept. 2006)("General Municipal Law §50-e makes unauthorized

an action against individuals who have not been named in a notice of claim"); <u>White v.

Averill Park Cent. School District</u>, 195 Misc.2d 409, 759 N.Y.S.2d 641 (Sup. Ct. 2003)

("The Court finds no merit to plaintiffs' argument that they may file a notice of claim

naming a municipal entity and then commence an action against a roster of individual municipal employees").

In this case, because Principal Avella has not been named as a respondent in the plaintiffs' notice of claim, the plaintiffs are precluded from the asserting their State claims sounding in tort against her in this action. Gonzalez v. City of New York, 20 Misc.3d 1130, 872 N.Y.S.2d 690 (Sup. Ct. 2008). Accordingly, the State claims contained in the first, sixth, seventh, and eighth causes of action, to the extent they are asserted against Principal Avella, should be summarily dismissed.

(B)  THE PLAINTIFFS' DEFAMATION CLAIM SHOULD BE DISMISSED

The plaintiffs' first cause of action asserts a State claim based on defamation against various named defendants, including Principal Avella. As pled, the plaintiffs allege that Principal Avella made three (3) allegedly defamatory statements. First, the plaintiffs allege that Principal Avella verbally told DC in the presence of others that "(y)our ideas and morals are disgusting and anyone who believes in the things you do is a despicable human being" (Amended Complaint, ¶¶ 45 and 140[a]). Second, the plaintiffs allege that Principal Avella verbally told DC about a white supremacist in her family who she frequently argues with (Amended Complaint, ¶¶46 and 140[b]). Finally, the plaintiffs allege that Principal Avella verbally told the plaintiff that "(y)our blonde hair and blue eyes won't do you any good in prison. They'd toss you like a salad" (Amended Complaint, ¶¶ 59 and 140[c]. For the reasons set forth below, the plaintiffs' defamation claims interposed against Principal Avella fail to state a viable cause of action.

The alleged defamatory spoken words on the part of Principal Avella as referenced above implicate the tort of slander. Albert v. Loksen, 239 F.3d 256 at 265 (2d Cir. 2001)("...spoken defamatory words are slander..."). The elements of slander are:

(a) a defamatory statement of fact, (b) that is false, (c) published to a third party, (d) of and concerning the plaintiff, (e) made with the applicable level of fault on the part of the speaker, (f) either causing special harm or constituting slander per se, and (g) not protected by privilege. Sash v. Rosahn, 2009 WL 1683877 (S.D.N.Y.).

In the case at bar, the plaintiffs' plainly cannot prove, and have otherwise failed to plead, the requisite special harm resulting from the alleged defamatory statements attributed to Principal Avella. In New York the law is clear that "(a)s a rule, slander is not actionable unless the plaintiff suffers special damages, which contemplate the loss of something having economic or pecuniary value." Walia v. Vivek Purmasir & Associates, Inc., 160 F. Supp.2d 380 at 394 (E.D.N.Y. 2000). Damages based upon allegations of mental or emotional distress are insufficient to sustain a claim based upon slander (see, Liberman v. Gelstein, 80 N.Y.2d 429, 590 N.Y.S.2d 857 [Ct. App. 1992], and it is the plaintiff's burden on a slander claim to plead, with specificity, the economic losses allegedly sustained. Nunez v. A-T Financial Information, Inc., 957 F. Supp. 438 at 441 (S.D.N.Y. 1997)("To satisfy the special damages requirement, a plaintiff must set forth an itemized account of her losses; round figures or a general allegation of a dollar amount as special damages will not suffice").

Here, because the plaintiffs have failed to plead that the alleged defamatory statements attributed to Principal Avella resulted in any specific economic or pecuniary harm, the plaintiff's first cause of action must be dismissed. Bobal v. Rensselaer Polytechnic Institute, 916 F.2d 759 (2d Cir. 1990).

Although the plaintiffs' first cause of action also makes the claim that the statements of the defendants (including Principal Avella) are "slanderous per se" (Amended Complaint, ¶145), the plaintiffs' Amended Complaint fails to adequately plead

any such claim. A cause of action based on slander per se is limited to challenged statements imputed to a speaker which: (a) charge the plaintiff with a serious crime; (b) tend to injure the plaintiff in his or her trade, business or profession, (c) imply that the plaintiff has a loathsome disease, or (d) impute unchastity to a woman. Ferlito v. County of Suffolk, 2007 WL 4180670 (E.D.N.Y.). Here, none of the statements attributed to Principal Avella fall within these categories, and the plaintiffs' slander per se allegation therefore fails to state a viable cause of action.

Finally, the content of the challenged statements simply does not rise to the level of actionable slander as a matter of law. Specifically, two of the statements relied upon by the plaintiffs and attributed to Principal Avella (i.e. Principal Avella's statements about her feelings about those individuals who hold racist beliefs [Amended Complaint, ¶¶ 45 and 140(a)], and Principal Avella's statements about how DC might fare if he were in prison [Amended Complaint, ¶¶ 59 and 140(c)]), are clearly simply statements of opinion, not fact, and are therefore not actionable. Torain v. Liu, 2007 WL 2331073 (S.D.N.Y.). Further, the statement attributed to Principal Avella about her conflicts with a family member who purportedly holds racist views (Amended Complaint, ¶¶ 46 and 140[b]) simply is not, on its face, a defamatory factual statement "of and concerning the plaintiff" and is not therefore actionable. Kirch v. Liberty Media Corp., 449 F.3d 388 at 399-400 (2d Cir. 2006)("The 'of and concerning' requirement stands as a significant limitation on the universe of those who may seek a legal remedy for communications they think to be false and defamatory and to have injured them"). Indeed, even if the statement could be interpreted as making an indirect reference to DC, it is nevertheless non-actionable since, as noted above, such a reference would constitute, at best, a statement of opinion - not fact, and the plaintiffs have otherwise not claimed that this

verbal statement resulted in economic or pecuniary loss.

(C)   THE PLAINTIFFS INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS CLAIM IS NON-VIABLE

The plaintiffs' sixth cause of action alleges that the conduct of all defendants,

including Principal Avella, amounted to the intentional infliction of emotional distress of

the plaintiffs. Under well-settled law, however, the plaintiffs' claims are non-viable.

In order to establish to a claim for the intentional infliction of emotional distress a

plaintiff must prove: (a) extreme and outrageous conduct; (b) an intent to cause, or a

disregard of a substantial probability of causing, severe emotional distress; (c) a causal

connection between the conduct and the injury; and (d) severe emotional distress. Daniels

v. Alvarado, 2004 WL 502561 (E.D.N.Y.); Howell v. New York Post Co., 81 N.Y.2d

1151, 596 N.Y.S.2d 350 (Ct. App. 1991).  The standard for establishing extreme and

outrageous conduct is an exacting one, and is met only where the conduct at issue is "so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency and to be regarded as atrocious, and utterly intolerable to a civilized

community." Murphy v. American Home Products Corp., 58 N.Y.2d 293, 461 N.Y.s.2d

232 at 236 (Ct. App. 1991).  In the case at bar, the claims asserted against Principal

Avella allege, at best, that she did not respond vigorously enough to the DC's complaints

of being harassed during the time period of October 28 to October 31, 2008; that she

erroneously believed – as reflected in her alleged statements to DC - that DC harbored

racist beliefs; and that she improperly acted upon a Disciplinary Referral relating DC's

dissemination of a document containing racist, violent and vulgar content in December of

2008. The nature of these claims asserted against Principal Avella – regardless of the

plaintiffs' disagreement with her actions – simply do not rise to the standard required to

state a viable intentional infliction of emotional distress claim.  See, Leibowitz v. Bank Leumi Trust Co. of New York, 152 A.D.2d 169, 548 N.Y.S.2d 513 (A.D. 2 Dept. 1989)(observing that although use of religious, ethnic or racial slurs was reprehensible, its use could not serve as a basis for an intentional infliction of an emotional distress claim).

(D)     THE PLAINTIFFS' CLAIMS UNDER THE HUMAN RIGHTS LAW SHOULD
        BE DISMISSED

The plaintiffs' fourth cause of action asserts a cause of action against all defendants, including Principal Avella, based on violations of the New York State "Human Rights Law."  This statute, however, is inapplicable here.  Executive Law §296(4) prohibits "an educational corporation or association" from engaging in specified acts of discrimination.  However, a school district is not "an educational corporation or association" within the meaning of Executive Law §296(4), and therefore, the provisions of this statute do not apply, as a matter of law, to either the District or its employees. East Meadow Union Free School District v. New York State Division of Human Rights, 65 A.D.3d 1342, 886 N.Y.S.2d 211 (A.D. 2 Dept. 2009).

V.      **TC AND KC LACK STANDING TO ASSERT CLAIMS FOR DAMAGES
        TO THEMSELVES OR ON BEHALF OF DC**

In New York, an infant who has not reached the age of majority may only appear in a lawsuit through those representative individuals set forth in CPLR §1201. However, a person reaches the age of majority, and may sue on his own behalf, at age 18. CPLR §105(j). In this case, DC was born on October 10, 1991, and reached the age of 18 on October 10, 2009 (see Exhibit "C" to Petition to file late notice of claim, annexed to Attorney's Declaration as Exhibit "A"). He therefore reached the age of majority *before* the October 27, 2009 commencement date of this action – without the need for others to

appear for him in a representative capacity – and must be deemed to be the sole party to this action. Doe v. Board of Education of Penfield School District, 12 Misc.3d 1197(A), 824 N.Y.S.2d 768 ( Sup. Ct. 2006).   Accordingly, DC's parents – TC and KC – are not properly named herein in any representative capacity.

Likewise, DC's parents have no claims in their own capacities because they have no standing. A plaintiff has standing to bring an action in federal court only if the conduct of the defendants has caused each plaintiff to *personally* suffer an injury in fact. See, Daimler Chrysler Corp. v. Cuno, 547 U.S. 126 (2006).   A party cannot bring Section 1983 claims that are based on a violation of the constitutional rights of others. Morgan v. City of New York, 166 F.Supp.2d 817, 819 (S.D.N.Y.2001) ("[Plaintiff] lacks standing to bring individual claims under [Section] 1983 based upon a deprivation of her daughter's constitutional rights.").

With respect to TC and KC – DC's parents – because they have not alleged that Principal Avella's alleged discriminatory conduct or tortious behavior was directed to them specifically, any theoretical claims they may have against her must be dismissed. Yap v. Oceanside Union Free  School District, 303 F.Supp.2d 284, (E.D.N.Y. 2004).

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that Joanne Avella's motion to dismiss the plaintiffs' Amended Complaint pursuant to FRCP 12 (b)(1) and (6) be granted in its entirety.

Dated: New Windsor, New York
           April 30, 2010

Yours, etc.,

DRAKE, LOEB, HELLER, KENNEDY,
GOGERTY, GABA & RODD, PLLC

By: _____

ADAM L. RODD (AR-3484)
*Attorneys for Defendant,*
*JOANNE AVELLA*
555 Hudson Valley Avenue
Suite 100
New Windsor, New York 12553
Tel. No.:  (845) 561-0550